[No. H011568. Sixth Dist. Nov. 30, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
ALEJANDRO GARIBAY LARA, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts VI and VII.

[redacted] 

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

660

## COUNSEL

Cliff Gardner, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Matthew P. Boyle, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WUNDERLICH, J.—**

I

*Statement of the Case*

Defendant Alejandro Garibay Lara appeals from a judgment entered after a jury convicted him of battery on a peace officer with a deadly weapon (Pen. Code, §§ 242, 243, subd. (c), 12022, subd. (b)), battery against a different peace officer, resisting arrest with a weapon (Pen. Code, § 148, subd. (b)), assault on a peace officer with a deadly weapon (Pen. Code, § 245, subd. (c)), possession of cocaine for sale (Health & Saf. Code, § 11351), transportation of cocaine (Health & Saf. Code, § 11352, subd. (a)), possession of marijuana (Health & Saf. Code, § 11357, subd. (b)) and driving without a license (Veh. Code, § 12500, subd. (a)). The court also found that defendant had suffered a prior serious felony conviction for residential burglary (Pen. Code, §§ 459-460, 667) and a prior conviction for possession of a controlled substance. (Health & Saf. Code, § 11351).[1]

On appeal, defendant contends (1) there is insufficient evidence to support his convictions for battery, assault, and resisting arrest; (2) the court erroneously withdrew from the jury's consideration an element of these offenses; (3) the court gave incomplete instructions on these offenses; (4) there was insufficient evidence of injury to support one conviction for battery; (5) the court failed to instruct on lesser included offenses; (6) the court erred in failing to instruct on the type of evidence necessary to convict defendant of driving without a license; (7) the trial court erred in imposing fines without determining defendant's ability to pay; and (8) the court erred in imposing a consecutive term for a battery conviction. We affirm the judgment.

II

*Facts*

On September 8, 1992, at 2 a.m., Officer Michael Edward Sullivan stopped a vehicle driven by defendant because it did not have an operational rear license plate light. Sullivan asked defendant for his license, but defendant failed to produce one, saying he did not have one. At that time Sullivan noticed that defendant's pupils were dilated, his speech was excited, and his mouth was dry. He determined that defendant was under the influence of a stimulant and asked him to exit the vehicle.

---

[1]Unless otherwise specified, all further statutory references are to the Penal Code.

At this point, Officer Kevin Mank arrived as backup. Officer Sullivan pat-searched defendant and noticed a plastic baggie protruding from his waistband. Police later discovered that the bag contained bindles of cocaine and a small amount of marijuana. When Sullivan asked defendant about it, defendant panicked and attempted to run away. Sullivan grabbed defendant by the back of the shirt, but he broke free. Officer Mank then tackled him.

Defendant said he was giving up, but when Mank began to alight, defendant pushed him and ran off again. Mank caught up with and tackled him, but defendant struggled to get away, hitting and kicking Mank. Officer Sullivan then hit defendant with his baton.

Eventually, defendant appeared to calm down and go limp. However, when Officer Mank attempted to handcuff him, defendant got up and again started to struggle with him. He struck Officer Sullivan in the face, grabbed Mank's baton, and hit Sullivan in the hand. Sullivan tackled him. Mank also jumped on defendant.

At this time a backup officer arrived. Officer Sullivan again struck defendant with his baton, and the three officers were finally able to arrest and handcuff defendant.

During the course of their struggles with defendant, both Sullivan and Mank hit defendant with either their fists or batons. The plastic bag seen from defendant's waistband was retrieved and a bag of cocaine bindles was found in his pockets.

### III

### *The Defense*

Defendant did not testify. His only evidence was addressed to the assault, battery, and resisting arrest charges and was designed to establish that Officer Sullivan used excessive force against him. In particular, defendant presented two witnesses, each of whom testified to a different instance when Officer Sullivan allegedly used excessive force. Officer Sullivan denied that he used excessive force on these occasions.

### IV

### *Sufficiency of the Evidence*

Defendant contends there is insufficient evidence to support his convictions for assault, simple battery, battery causing an injury, and resisting a

peace officer. In particular, he claims there is insufficient evidence that Officers Sullivan and Mank were "peace officers" and that Officer Mank suffered an injury. We disagree.

### A.  Standard of Review

In determining the sufficiency of evidence, we must review the whole record in the light most favorable to the judgment to see whether it contains substantial evidence—i.e., evidence that is credible and of solid value—from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. (*People* v. *Bloom* (1989) 48 Cal.3d 1194, 1208 [259 Cal.Rptr. 669, 774 P.2d 698]; *People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]; see *Jackson* v. *Virginia* (1979) 443 U.S. 307, 318 [61 L.Ed.2d 560, 573, 99 S.Ct. 2781].) We presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. (*People* v. *Bloyd* (1987) 43 Cal.3d 333, 346-347 [233 Cal.Rptr. 368, 729 P.2d 802].) "Whether the evidence presented at trial is direct or circumstantial, . . . the relevant inquiry on appeal remains whether *any* reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." (*People* v. *Towler* (1982) 31 Cal.3d 105, 118 [181 Cal.Rptr. 391, 641 P.2d 1253].)

### B.  Status of Victims

Defendant notes that the assault, battery, and resisting offenses make the status of the victim as a "peace officer" an element of these offenses.

We first discuss the definition of "peace officer." Chapter 4.5 of title 3 of part 2 of the Penal Code, commencing with section 830, is entitled "Peace Officers." Section 830 defines a "peace officer" and provides, in relevant part, "[a]ny person who comes within the provisions of this chapter and who otherwise meets all standards imposed by law on a peace officer is a peace officer, and notwithstanding any other provision of law, no person other than those designated in this chapter is a peace officer." Section 830.1 provides, in relevant part that "any police officer, *employed in that capacity and appointed by the chief of police or the chief executive of the agency*, of a city . . . is a peace officer." (Italics added.)

As defendant points out, the emphasized language was added to the statute in 1990. (See Stats. 1990, ch. 1695, § 9.) Before then, the statute provided, in relevant part, "any police officer of a city . . . is a peace officer." (See former § 830.1, Stats. 1981, ch. 744, § 1, pp. 2914-2915.)

The apparent purpose of this change was to clarify any possible ambiguity in the former definition by explicitly excluding therefrom (1) persons whose

occupational duties may overlap with those of a police officer (e.g., private security guard, private investigator, etc.), *but* who are not officially employed by a city agency; and (2) persons who are officially employed by a city agency, but who do not have the occupational duties of a police officer. With this purpose in mind, we construe the statutory definition to confer peace officer status on any person officially hired to be a police officer by a city agency (i.e., appointed as and given the duties of a police officer by an official of a city agency authorized to do so).[2]

Here, Officers Sullivan and Mank each testified that he was employed by and worked for the San Jose Police Department as a police officer. Each also testified that on the night in question, he was in uniform, driving a police cruiser on regular police patrol in a specific area of the city to which he had been officially assigned.

This testimony is substantial direct evidence that both Sullivan and Mank were employed *as* police officers (i.e., "in that capacity"). Moreover, since we presume that official duty has been regularly performed (Evid. Code, § 664), we may here reasonably presume that official duty had been regularly performed in the assignment of police vehicles, specific patrol areas, and general police patrolling responsibilities to these officers. Given the officers' actual employment as police officers by the San Jose Police Department, and the regular assignment of police duties to them by the department, the evidence supports a logical and reasonable inference, based on probability not possibility, that these officers had been officially hired as and given the duties of police officers by the San Jose Police Department, an agency of the city.[3] (See Evid. Code, § 600, subd. (b); *Aguimatang* v. *California State Lottery* (1991) 234 Cal.App.3d 769, 800 [286 Cal.Rptr. 57].) This inference supports a finding that the officers were "peace officers."

[2]We consider unreasonable a literal interpretation of the statute, under which the only police officers who could be considered "peace officers" would be those actually, directly, and personally hired (i.e., appointed) by the chief of police or chief executive officer of an agency. Such a construction would deny peace officer status to those who may be hired via a proper and legitimate delegation of appointing authority. Rather, as discussed above, we read the statutory language in light of its purpose, which is to define "peace officers" to include only those police officers, who are officially hired as such by a city agency. (See *People* v. *Ali* (1967) 66 Cal.2d 277, 280 [57 Cal.Rptr. 348, 424 P.2d 932].)

[3]Evidence Code section 664 provides: "It is presumed that official duty has been regularly performed. This presumption does not apply on an issue as to the lawfulness of an arrest if it is found or otherwise established that the arrest was made without a warrant." Defendant suggests that the presumption concerning official duty does not apply because "the arrest in this case was warrantless and the lawfulness of the arrest was very much at issue." This argument is meritless. The presumption here is not applied to establish the propriety of the *officers'* conduct in arresting defendant without a warrant; rather it is applied to establish that long before the events in this case, official duty concerning the appointment of these officers to the San Jose Police Department was regularly performed.

· Indeed, this is both an obvious inference and, we believe, the only reasonable one. Not surprisingly, at trial, defense counsel made no effort to rebut this inference or raise a material question concerning the officers' status as "peace officers."

### C. *Existence of Injury*

The record reveals that during the altercation with defendant, Officer Mank bruised both his knees and received numerous cuts and abrasions on his hands. He also was exposed to defendant's blood. As a result, Mank went to the San Jose Emergency Room, where professional medical personnel cleaned his wounds, gave him supplies for scrubbing himself later, "checked out [his] knees to make sure there was no ligament damage or anything[,]" and "treated the contusions on [his] knees."

█ Defendant points out that he was charged with a battery against Officer Mank that caused "injury," and that section 243, subdivision (f)(6), specifically defines "injury" as "any physical injury which requires professional medical treatment." He argues that under this definition, an injury is not something that "can be cured or alleviated with common household remedies, with self-help or by doing nothing" but must be "sufficiently severe a physician would recommend or perform affirmative acts in intervention, such as minor surgery, suturing, skin grafts, administration of prescription medicines or the like."[4] With this view in mind, he claims that there is insufficient evidence that his battery on Officer Mank inflicted an injury "which required[d] professional medical treatment." (§ 243, subd. (f)(6).)

The People argue, and we agree, that defendant's construction of "injury" in section 243, subdivision (f)(6), is unreasonably narrow and, in effect, equates "injury" in that section with serious or great bodily injury in subdivision (f)(5), thereby destroying the legislative distinction between the two. (See § 243, subd. (f)(5); see *People* v. *Hawkins* (1993) 15 Cal.App.4th 1373, 1375 [19 Cal.Rptr.2d 434] ["serious" and "great" bodily injury are "substantially the same"].)

In our view, where, as here, it is undisputed that the officer/victim suffered injuries that were, in fact, treated by professional medical personnel at an emergency room, there is sufficient evidence to support a finding that

---

[4]Defendant's argument and language are from a recent case, *In re Julian M.*█ (Cal.App.), which, however, has been deleted from the official reports by order of the Supreme Court dated May 26, 1994. Defendant offers no other support for his definition of "injury."

he suffered an "injury" within the meaning of section 243, subdivision (f)(6).

## V

### *Instructional Error*

Defendant contends that the trial court improperly instructed the jury on whether Sullivan and Mank were "peace officers," failed to fully instruct on how to determine whether the officers were "engaged in the performance of their duties" when the offenses were committed, failed to instruct on the lesser included offenses of simple battery and assault with a deadly weapon, and failed to instruct the jury that it could not convict him of driving without a license unless there was proof independent of his own statements.

### A. *Definition of "Peace Officer"*

The trial court instructed the jury that it must find that defendant assaulted, battered, and resisted a "peace officer." ■ Defendant, however, claims it failed to instruct them, in accordance with the statutory definition, that a "police officer" is a "peace officer" only if he or she is "employed" as a police officer and "appointed by the chief of police or the chief executive of the [city's] agency." (See § 830.1, subd. (a).) Noting that instead, the court instructed them that "[a] San Jose Police Department officer *is* a peace officer," he argues that the court "completely" withdrew from the jury the factual question of whether Officers Sullivan and Mank were "peace officers." (Italics added.) This error, he claims, is reversible per se.

It is difficult to fault the trial court. In 1988, before section 830.1 was amended to its present state, our Supreme Court expressly upheld the validity of an instruction virtually identical to that given here. (See *People* v. *Brown* (1988) 46 Cal.3d 432, 443-444 [250 Cal.Rptr. 604, 758 P.2d 1135].)[5] We further note that the court gave the most current CALJIC instructions, none of which reflect the 1990 amendment, even though at least one was revised in *1993*. (See CALJIC Nos. 9.20 (1989 rev.), 9.80 (1990 new), and 9.22 (1993 rev.).) At trial, no one suggested that the instructions were defective.

Nevertheless, we agree with defendant that the 1990 amendment to section 830.1 renders the instruction in the language of the former statute

---

[5]In his opening brief, however, defendant persuasively argues that because the instruction in *Brown* was based on an *older* version of section 830.1, *Brown* is not controlling here. With noticeable lack of candor, the People ignore the instructional issue, assert without explanation that the 1990 amendments do not affect the reasoning of *Brown*, and then simply reargue that substantial evidence supports the judgment.

inadequate. An appropriate instruction should address the purpose of and thus reflect the amendment. Nevertheless, we disagree with defendant's claim that the instruction given *completely* withdrew from the jury the issue of whether Sullivan and Mank were "peace officers." The jury was required to find beyond a reasonable doubt that Officers Sullivan and Mank were "peace officers." Moreover, in defining "a San Jose Police Department Officer [as] a peace officer," the court implicitly required a finding that Sullivan and Mank were not only police officers but officers of the San Jose Police Department.

In *People* v. *Cummings* (1993) 4 Cal.4th 1233, 1315 [18 Cal.Rptr.2d 796, 850 P.2d 1], our Supreme Court recognized "a clear distinction between instructional error that entirely precludes jury consideration of an element of an offense and that which affects only an aspect of an element." The distinction affects the applicable standard of review. Whereas the former type of error appears to be reversible per se (*id.* at p. 1315; see *People* v. *Hernandez* (1988) 46 Cal.3d 194, 210-211 [249 Cal.Rptr. 850, 757 P.2d 1013]), the latter is subject to review under the harmless error analysis of *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065]. (*People* v. *Dyer* (1988) 45 Cal.3d 26, 64 [246 Cal.Rptr. 209, 753 P.2d 1]; *People* v. *Wilkins* (1993) 14 Cal.App.4th 761, 779 [17 Cal.Rptr.2d 743], see *Pope* v. *Illinois* (1987) 481 U.S. 497, 502-503 [95 L.Ed.2d 439, 446-447, 107 S.Ct. 1918][6] ; *Rose* v. *Clark* (1986) 478 U.S. 570, 576-579 [92 L.Ed.2d 460, 469-471, 106 S.Ct. 3101].)

Applying the *Chapman* test here, we conclude that the failure to explicitly instruct in accordance with the amended definition of "peace officer" was harmless beyond a reasonable doubt. Given the officers' undisputed testimony about their employment and official duties on the night in question, the lack of any evidence to the contrary, and the jury's implicit finding beyond a reasonable doubt that Sullivan and Mank were, in fact, police officers of the San Jose Police Department, we consider it inconceivable that a rational juror, properly instructed, would nevertheless have found that Sullivan and Mank either were not employed as police officers or were not officially hired and given the duties of police officers by the San Jose Police

---

[6]In *Pope* v. *Illinois, supra,* 481 U.S. at page 503 [95 L.Ed.2d at pages 446-447], and *Carella* v. *California* (1989) 491 U.S. 263, 267 [105 L.Ed.2d 218, 223, 109 S.Ct. 2419], the court phrased the test in terms of whether a rational juror, properly instructed, could not have found the aspect of the element omitted from the instructions. We consider this verbal formulation essentially the same·as the *Chapman* standard, where the question is whether on the whole record the error is harmless beyond a reasonable doubt. (*Chapman* v. *California supra,* 386 U.S. at p. 24 [17 L.Ed.2d at pp. 710-711].) In other words, an error is not harmless beyond a reasonable doubt where a properly instructed juror might not have found that aspect of an element omitted from the instructions given.

Department. Stated differently, no reasonable juror could have found that Sullivan and Mank were not "peace officers."

## B. *Target Offenses*

■ Defendant notes that because the assault, battery, and resisting arrest offenses proscribe conduct against a peace officer who is "engaged in the performance of his or her duties" (see §§ 243, subd. (c); 245, subd. (c); 148, subd. (a)), the jury had to find that Officers Sullivan and Mank were engaged in the performance of their duties when defendant committed the offenses against them. (See *People* v. *Wilkins, supra,* 14 Cal.App.4th at p. 776.)

Here, the court instructed the jury that a peace officer is engaged in the performance of his duties if he is making or attempting to make a lawful arrest or a lawful detention. The court further instructed the jury on lawful arrests, lawful detentions, probable and reasonable cause, and the prosecution's burden to prove beyond a reasonable doubt that Sullivan and Mank were engaged in the performance of their duties.

Defendant points out, however, that to establish the engaged-in-etc. element of the offenses, the prosecution sought to prove that Sullivan had properly detained defendant for driving without a rear license plate light (Veh. Code, § 24601[7]) and was attempting to arrest him for being under the influence of some drug (Health & Saf. Code, § 11550[8]). Given the prosecution's theory, defendant contends the trial court had a sua sponte duty to instruct on these target offenses. He argues that without such instructions the jury was unable to assess the propriety of the detention and attempted arrest. We are unpersuaded.

Officer Sullivan testified that (1) he stopped defendant's car because the rear license plate light was inoperative; and (2) after observing that defendant's pupils were dilated, his speech was excited, and his mouth was dry, he concluded that defendant was under the influence of a drug. Defendant introduced no evidence at trial to controvert this testimony. Indeed, his defense was that the officers used excessive force against him. Thus, the factual basis for determining the engaged-in-etc. element was undisputed.

Given the officer's testimony, the target offenses were obvious. Moreover, they require no specialized legal knowledge to comprehend but are simple

---

[7]Vehicle Code section 24601 provides, in relevant part, "Either the taillamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear license plate during darkness and render it clearly legible from a distance of 50 feet to the rear."

[8]Health and Safety Code section 11550 provides, in relevant part, "No person shall use, or be under the influence of any controlled substance . . . ."

crimes, whose elements are obvious and would be commonly and easily understood by those familiar with the English language. In short, we cannot see, and defendant does not explain, how the failure to instruct on the target offenses prevented the jury from being able to determine the propriety of the detention and attempted arrest.

Under certain factual situations, courts may have a sua sponte duty to give additional instructions concerning the engaged-in-etc. element. (Cf. *People v. Wilkins, supra,* 14 Cal.App.4th 761, discussed below, at p. 672.) Here, however, additional instructions were not so necessary for the jury's under-standing of this element (see *People v. Wickersham* (1982) 32 Cal.3d 307, 323 [185 Cal.Rptr. 436, 650 P.2d 311]) or essential to its determination that the court had a sua sponte duty to give them.

Assuming for purposes of argument only that as a matter of technical legal propriety the court should have instructed on the target offenses, we would find the error harmless even under *Chapman v. California, supra,* 386 U.S. at page 24 [17 L.Ed.2d at pp. 710-711]. Given the jury's finding beyond a reasonable doubt that Officer Sullivan was engaged in the performance of his duties when he detained and attempted to arrest defendant for the express and undisputed reasons he gave, we conclude no rational juror, instructed on the target offenses, could have found that Sullivan was *not* engaged in the performance of his duties.[9]

Defendant's reliance on *People v. Mouton* (1993) 15 Cal.App.4th 1313 [19 Cal.Rptr.2d 423] and *People v. Wilkins, supra,* 14 Cal.App.4th 761 is misplaced.

In *Mouton,* the prosecution sought to prove the defendant guilty of murder on the theory that he aided and abetted another in the commission of three possible crimes—carrying a concealed weapon, brandishing a weapon, as-saulting with a deadly weapon—and that the killing was the natural and probable consequence of any one of these target crimes. (*People v. Mouton, supra,* 15 Cal.App.4th at p. 1318.) On appeal, the court concluded that the trial court erred in failing to instruct the jury on these target offenses. (*Ibid.*)

---

[9]We express no opinion concerning whether the error, if any, *must* be reviewed under the *Chapman* standard. However, we reject defendant's suggestion the error is reversible per se because it *entirely* removed the engaged-in-etc. element from the jury's consideration. Once again, defendant fails to appreciate the distinction between error that completely removes an element and one that affects only part of an element. (See *People v. Cummings, supra,* 4 Cal.4th at p. 1314.) As noted above, the jury was extensively instructed on the engaged-in-etc. element and required to find it beyond a reasonable doubt. Under the circumstances, the alleged error affected only part of an element. It did not entirely remove it from the jury's consideration.

The court explained that each target offense was an element of the charged murder because the jury had to determine beyond a reasonable doubt whether the defendant committed it and then whether the murder was the natural and probable consequence of committing it. (*Id.* at p. 1319.) Without appropriate instructions, the jury was not required to make these findings and lacked proper guidance in determining the defendant's ultimate guilt for the charged murder. (*Ibid.*) However, the court did not find the error reversible per se. (*Id.* at p. 1320.) It reversed because the legal definition of one of the target offenses—assault with a deadly weapon—was not one commonly understood without appropriate instructions. (*Id.* at pp. 1319-1321.)[10]

Here, to find that Officer Sullivan was engaged in the performance of his duties, the jury did not have to determine whether defendant committed the target offenses. Indeed, whether he did or did not was irrelevant. Moreover, as noted above, the target offenses here were obvious and easily understood without specific instructions.

In *People* v. *Wilkins, supra,* 14 Cal.App.4th 761, an officer arrested the defendant inside his home without a warrant. In instructing the jury on whether the officer was "engaged in the performance of his duties," the trial court explained only the need for probable cause to make an arrest. On appeal, the court concluded that the trial court should also have instructed the jury that an arrest inside a home without a warrant required exigent circumstances. The failure to do so removed part of the engaged-in-etc. element from the jury's consideration. (*Id.* at pp. 776-779.) However, the court went on to find the error harmless under *Chapman.* (*Id.* at p. 779.)

Here, the particular facts did not mandate further instruction on the nature of a detention or arrest, and defendant makes no claim that the court's instructions were improper, incomplete, or inappropriate under the specific facts of the case.

## C.   *Lesser Included Offenses*

■   Defendant points out that the court instructed the jury that if it believed that the officers used excessive force against defendant, then it should acquit him of the battery and assault charges. Defendant argues, however, that even if the jury believed his defense, it still could have

---

[10]In *People* v. *Solis* (1993) 20 Cal.App.4th 264, 269-276 [25 Cal.Rptr.2d 184], the court disagreed with the holding in *Mouton* and concluded that instructions on target offenses were neither required nor appropriate. The issue is now before the California Supreme Court in *People* v. *Prettyman* (1994) 29 Cal.App.4th 817, 823 [29 Cal.Rptr.2d 299], review granted June 30, 1994 (S040008).

convicted him of the lesser included offenses of simple battery and simple assault with a deadly weapon. (See *People* v. *Hood* (1969) 1 Cal.3d 444, 450 [82 Cal.Rptr. 618, 462 P.2d 370] [simple assault a lesser of assault on peace officer]; *People* v. *Curtis* (1969) 70 Cal.2d 347, 357 [74 Cal.Rptr. 713, 450 P.2d 33] [simple battery a lesser of battery on a peace officer].) Thus, he argues that the court had a sua sponte duty to give these instructions and erred in failing to do so.

The People note that the trial court expressly acknowledged its general duty to instruct on lessers but was concerned that giving them here would contradict the defense of excessive force. When the court asked for defense counsel's thoughts on the matter, she said she was "not requesting for any lessers[.]" The court then said, "That's in accordance with what you said yesterday. I said it this morning, but—okay." Under the circumstances, the People argue that defendant's claim on appeal is barred by the doctrine of invited error. We agree.

"The obligation to instruct on lesser included offenses exists even when a defendant, as a matter of trial tactics, objects to their being given. But the doctrine of invited error will operate to preclude a defendant from gaining reversal on appeal because such an error was made by the trial court at the defendant's behest. [Citations.]" (*People* v. *Duncan* (1991) 53 Cal.3d 955, 969 [281 Cal.Rptr. 273, 810 P.2d 131].)

Defendant suggests that counsel's mere failure to request "lesser" instructions does not constitute invited error. This may be so as a general rule. However, counsel here did not merely fail to request them. Rather, the court invited discussion on whether they should be given, indicating concern that they might harm the defense. In this context, defense counsel's comment was the equivalent of saying she did not want lesser instructions.

Defendant further argues that the doctrine does not apply because defense counsel was laboring under an erroneous belief, apparently shared by the trial court, that "lesser" instructions would contradict the defense. We disagree.

It is true that the doctrine applies only where the record affirmatively shows that counsel acted for tactical reasons and not out of ignorance or mistake. (*People* v. *Cooper* (1991) 53 Cal.3d 771, 830-831 [281 Cal.Rptr. 90, 809 P.2d 865].) However, defendant misunderstands this requirement. As our Supreme Court explained in *People* v. *Cooper*, *supra*, 53 Cal.3d at page 831, to establish invited error, "the record must show *only* that counsel made a conscious, deliberate tactical choice between having the instruction

and not having it. If counsel was ignorant of the choice, or mistakenly believed the court was not giving it to counsel, invited error will not be found. If, however, the record shows this conscious choice, it need not additionally show counsel correctly understood all the legal implications of the tactical choice. Error is invited if counsel made a conscious tactical choice. A claim that the tactical choice was uninformed or otherwise incompetent must, like any such claim, be treated as one of ineffective assistance of counsel." (Italics added.)

Here, even if, as defendant now suggests, defense counsel mistakenly believed the "lesser" instructions contradicted the defense, such a mistake would not preclude application of the doctrine. Moreover, the record does not convince us that this was the reason for defense counsel's choice against having lesser instructions. She could reasonably have wanted to avoid a compromise verdict and rely on an all-or-nothing defensive tactical strategy.[11] (See, e.g., *People* v. *Bunyard* (1988) 45 Cal.3d 1189, 1235 [249 Cal.Rptr. 71, 756 P.2d 795].)

### D.  *Independent Evidence of Guilt*

Defendant notes that to prove defendant guilty of driving without a license, Officer Sullivan testified that when he stopped defendant and asked for his license, defendant said he did not have one. Defendant now contends the court erred in failing to give the corpus delicti instruction sua sponte: "No person may be convicted of a criminal offense unless there is some proof of each element of the crime independent of any confession or admission made by him outside of this trial."[12] (CALJIC No. 2.72.) He claims the error compels reversal because there was *no evidence* apart from his statement to support a finding that he did not have a driver's license at the time he was stopped. We conclude that any instructional error was harmless.

It is well settled that the trial court has a duty to instruct the jury sua sponte that the corpus delicti of an offense must be proved independently of

---

[11]Obviously, defendant is aware of the *Cooper* court's explanation of invited error, for he cited *Cooper* in his opening and reply briefs. However, defendant does not alternatively argue that because of her mistaken belief, defense counsel was ineffective. This is not surprising because on the record before us, it is not reasonably probable the verdict would have been any more favorable to defendant had the instructions been given. (See *Strickland* v. *Washington* (1984) 466 U.S. 668, 693-694 [80 L.Ed.2d 674, 697-698, 104 S.Ct. 2052]; *People* v. *Pensinger* (1991) 52 Cal.3d 1210, 1276 [278 Cal.Rptr. 640, 805 P.2d 899].)

[12]This instruction embodies the corpus delicti rule: "In any criminal prosecution, the corpus delicti must be established by the prosecution independently from the extrajudicial statements, confessions or admissions of the defendant." (*People* v. *Wright* (1990) 52 Cal.3d 367, 403-404 [276 Cal.Rptr. 731, 802 P.2d 221].)

admissions. (*People* v. *Beagle* (1972) 6 Cal.3d 441, 455 [99 Cal.Rptr. 313, 492 P.2d 1].) "The omission, however, does not constitute reversible error if upon a reweighing of the evidence it does not appear reasonably probable that a result more favorable to defendant would have been reached in the absence of the error." (*Ibid.*) In reweighing the evidence, we are mindful that the corpus delicti may be proved by circumstantial evidence and need not be beyond a reasonable doubt. Rather, a slight or prima facie showing, permitting the reasonable inference that a crime was committed, is sufficient. (*People* v. *Diaz* (1992) 3 Cal.4th 495, 529 [11 Cal.Rptr.2d 353, 834 P.2d 1171].) Moreover, this inference need not be the only reasonable inference. (*People* v. *Towler* (1982) 31 Cal.3d 105, 115 [181 Cal.Rptr. 391, 641 P.2d 1253].)

The People note that during her opening statement, defense counsel stated, "My client, Mr. Lara, was the driver of that car. There is no dispute there. [¶] . . . He asks my client for his license. My client says, 'I don't have a license on me.' " Given counsel's concession about what defendant said, the People argue that defendant waived any corpus delicti issue concerning whether he possessed a driver's license. We disagree.

Although counsel may, by express statement or unequivocal conduct, concede a fact at trial, perhaps thereby making the corpus delicti rule inapplicable as to that fact (see *People* v. *Peters* (1950) 96 Cal.App.2d 671, 675-677 [216 P.2d 145]), defense counsel here did not concede the ultimate fact. Rather, she conceded at most that defendant made the statement to Officer Sullivan.

The People next argue that defendant waived the issue by failing to object to the admission of his extrajudicial statement. If defendant were claiming that the People failed to establish the corpus delicti before his extrajudicial statement was admitted, then his failure to object might defeat such a claim. (See, e.g., *People* v. *Wright* (1990) 52 Cal.3d 367, 404 [276 Cal.Rptr. 731, 802 P.2d 221]; cf. also *People* v. *Sally* (1993) 12 Cal.App.4th 1621, 1628 [16 Cal.Rptr.2d 161].) However, the claim here is instructional, not evidentiary, error.

Moreover, "[a]lthough the normal practice is to establish the corpus delicti first, before confessions or admissions are introduced, the *order of proof* may be varied. [Citations.]" (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Elements of Crime, § 137, p. 153, italics in original.) For this reason, trial court must give the corpus delicti instruction quoted above sua sponte. (*Id.* at p. 154.)

Finally, the People claim that the corpus delicti rule was abrogated by the Truth-in-Evidence provisions of article I, section 28, subdivision (d), of the California Constitution (hereafter article I, section 28(d)).[13] Presumably, therefore, the corpus delicti instruction need no longer be given.

In *People* v. *Culton* (1992) 11 Cal.App.4th 363, 373-376 [14 Cal.Rptr.2d 189], Justice Timlin agrees with the People's position in a concurrence to his own lead opinion. Although the issue is complex and intriguing, we need not necessarily address it, for we conclude that even if it were error to omit the corpus delicti instruction, the error was harmless. (See, e.g., *People* v. *Kirkpatrick* (1994) 7 Cal.4th 988, 1008 [30 Cal.Rptr.2d 818, 874 P.2d 248] [if defendant fails to show harm, claim may be rejected without discussing propriety of underlying cause]; *People* v. *Clark* (1992) 3 Cal.4th 41, 160 [10 Cal.Rptr.2d 554, 833 P.2d 561] [same]; *People* v. *Kelly* (1992) 1 Cal.4th 495, 548 [3 Cal.Rptr.2d 677, 822 P.2d 385] [same].)

Here, the record indicates that Officer Sullivan stopped a car that defendant was driving and asked if he had a driver's license. Defendant gave a response but did not produce one. Although the evidence is slight, one reasonable inference therefrom is that defendant was driving in violation of Vehicle Code section 12500, subdivision (a). Thus, we disagree with the premise of defendant's claim: that a properly instructed jury could not have found the corpus delicti of the offense. In our view, it is not reasonably probable the jury would have reached a more favorable verdict had the corpus delicti instruction been given. (See *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

VI, VII*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

VIII

*Disposition*

The order directing defendant to pay attorney fees is stricken. In all other respects, the judgment is affirmed. The matter is remanded, and the

---

[13]Article I, section 28(d) provides, in relevant part, "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding . . . . Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code, Sections 352, 782 or 1103."

*See footnote, *ante*, page 658.

trial court is directed to order the preparation of an amended abstract of judgment.

Cottle, P. J., and Mihara, J., concurred.

A petition for a rehearing was denied December 30, 1994, and appellant's petition for review by the Supreme Court was denied March 15, 1995.