[No. B123190. Second Dist., Div. Four. Nov. 30, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
HERAYEL AVANESSIAN et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portion of the opinion to be deleted is part C of the Discussion entitled "Substantial Evidence Supports Defendant Avanessian's Convictions on a Theory of Aiding and Abetting."

COUNSEL

David Kwan and Ludlow Creary for Defendant and Appellant Herayel Avanessian.

Michele A. Douglass, under appointment by the Court of Appeal, for Defendant and Appellant Henrik Mouradian.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Kenneth C. Byrne and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

VOGEL (C. S.), P. J.—

INTRODUCTION

A jury convicted defendants Herayel Avanessian and Henrik Mouradian of 10 offenses arising out of their creation of fraudulent smog certificates for 5 vehicles. Each was placed on formal probation and ordered to pay restitution. On this appeal defendants, represented by separate counsel, contend they were improperly convicted of violating Vehicle Code section 4463 because that statute does not prohibit the fraudulent production of smog certificates. In a related vein, they also contend that the court's instructions improperly removed a factual issue from the jury's determination: whether a smog certificate is a certificate within the meaning of the conduct proscribed by Vehicle Code section 4463. In the published portion of this opinion, we find no merit to either of these contentions. In the nonpublished portion of the opinion, we reject defendant Avanessian's contention that the evidence is insufficient to support his convictions based upon a theory of aiding and abetting.

STATEMENT OF FACTS

 As mandated by the traditional rule governing appellate review, we recite the evidence in the light most favorable to the judgment. (See, e.g., *People* v. *Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].)

The Bureau of Automotive Repair, a division of the Department of Consumer Affairs, regulates and investigates gas stations involved in issuing

smog certificates.[1] The station owner must be licensed to own a smog test machine and the owner is responsible for the oversight of the smog testing and the maintenance of all smog testing records. The smog test technician who administers the test is also licensed. To perform the smog test, the technician enters his personal identification code to establish a link to a central computer. The technician inspects the car and enters the relevant identifying data about the vehicle being tested. He attaches a tachometer to the engine of the car being tested and places a probe in the car's tailpipe. The engine is turned on and the probe measures the pollutants. If the vehicle passes the test, a certificate is electronically transmitted to the data base which is accessible to the Department of Motor Vehicles (DMV) and the Bureau of Automotive Repair. This is the data base the DMV checks for compliance when a car is registered. The machine also prints out a vehicle identification report reflecting the pertinent information.

On April 21, 1997, Raynaldo Ortiz, an investigator for the Bureau of Automotive Repair, conducted an all-day surveillance of Harry's Service Station in Burbank.[2] Defendant Avanessian has owned the station since 1987. Defendant Avanessian had been a licensed smog technician from 1985 to 1996. Beginning in November 1996, defendant Mouradian paid $700 per month to work at defendant Avanessian's station as a licensed smog technician, using the same equipment defendant Avanessian had previously operated. In addition, defendant Mouradian paid defendant Avanessian $8 for each smog certificate generated.

In the early morning of April 21, 1997, defendant Avanessian turned on the smog testing machine when he arrived. Defendant Mouradian arrived at approximately 11:00 a.m. He thereafter performed *two* smog tests on a Saturn and *two* smog tests on a 1991 Acura. Defendant Avanessian was present during these tests, including the time the machine printed out the vehicle identification reports falsely indicating that cars other than the Saturn and the 1991 Acura were being tested. In fact, defendant Avanessian helped remove some of the reports from the machine and place them in the files. Defendant Mouradian also performed one smog test each on a Ford and a Ford Explorer. Defendant Avanessian gave some assistance during the testing.

[1]Smog certificates are actually denominated "certificates of compliance or noncompliance." Health and Safety Code section 44010 states: "The motor vehicle inspection program shall provide for privately operated stations which shall be referred to as smog check stations and are authorized pursuant to Section 44015 to issue *certificates of compliance or noncompliance* to vehicles which meet the requirements of this chapter." (Italics added.) For purposes of clarity, we will use the term smog certificate.

[2]Not only did Ortiz testify to these observations but a videotape of the entire surveillance was entered into evidence.

Thereafter, a Nissan was driven into the garage. Defendant Mouradian placed the tachometer on the Nissan's engine but then placed the probe, which was handed to him by defendant Avanessian, in another car, an Isuzu. Defendant Avanessian walked between the two vehicles. After defendant Mouradian removed the tachometer from the Nissan's engine, defendant Avanessian closed the hood on the Nissan and drove the car out of the testing area. Ortiz concluded defendants were engaged in "clean piping," a process whereby a "clean car" (the Isuzu) provides the emission samples while the technician enters into the computer the identification for another car (the Nissan). By this method, a fraudulent smog certificate is created in the DMV data base.

Later that afternoon, Ortiz saw a Mercedes Benz being smog-tested.

Very shortly thereafter, Ortiz accessed the data base and learned that eight cars at Harry's Service Station allegedly passed the smog test on April 21, 1997: a Saturn, a Dodge, a Ford, a 1990 Acura, a 1995 Acura, a Chevrolet Caprice, a Nissan, and a Mercedes Benz. Ortiz had not observed a Dodge or a Chevrolet and had seen only a 1991 Acura. Consequently, it was determined that only three of the eight smog certificates were issued legitimately. Five certificates were fraudulently created through "clean piping" for the Nissan, the Dodge, the Chevrolet Caprice, the 1990 Acura, and the 1995 Acura. Ortiz obtained a search warrant and seized the smog testing machine and related paperwork.

Based upon the above facts, defendants were charged with and convicted of five counts of uttering a false smog certificate in violation of Vehicle Code section 4463, subdivision (a)(2)[3] and five counts of unauthorized access to computer systems with intent to defraud in violation of Penal Code section 502, subdivision (c)(1).

---

[3]Vehicle Code section 4463 provides, in pertinent part:

"(a) Every person who, with intent to prejudice, damage, or defraud, commits any of the following acts is guilty of a felony and upon conviction thereof shall be punished by imprisonment in the state prison for 16 months, two or three years, or by imprisonment in the county jail for not more than one year:

"(1) Alters, forges, counterfeits, or falsifies any certificate of ownership, registration card, certificate, license, license plate, device issued pursuant to Section 4853, special plate, or permit provided for by this code or any comparable certificate of ownership, registration card, certificate, license, license plate, device comparable to that issued pursuant to Section 4853, special plate, or permit relating to motor vehicles provided for by any foreign jurisdiction, or alters, forges, counterfeits, or falsifies any such document, device, or plate with intent to represent it as issued by the department, or alters, forges, counterfeits, or falsifies with fraudulent intent any endorsement of transfer on a certificate of ownership, or with fraudulent intent displays or causes or permits to be displayed or have in his or her possession any blank, incomplete, canceled, suspended, revoked, altered, forged, counterfeit, or false certificate of

## DISCUSSION

### A. *Defendants' Conduct Was Prohibited by Vehicle Code Section 4463*

 Defendants first contend that their conduct was not prohibited by Vehicle Code section 4463.

Vehicle Code section 4463 provides, in pertinent part: "Every person who, with intent to . . . defraud, commits any of the following acts is guilty of a felony . . . : [¶] (1) *Alters, forges, counterfeits, or falsifies any* certificate of ownership, registration card, *certificate,* license, license plate, . . . special plate, or permit *provided for by this code* . . . ."[4] (Italics added.)

Defendants correctly note that the procedures for testing car emissions and issuing smog certificates are set forth in Health and Safety Code section 44000 et seq. These statutory provisions appear in chapter 5 (Motor Vehicle Inspection Program) of part 5 (Vehicular Air Pollution Control) of division 26 (Air Resources) of the Health and Safety Code. Based upon this, defendants argue that a smog certificate is not a "certificate . . . provided for by this [Vehicle Code]." (Veh. Code, § 4463.)

Nonetheless, defendants' contention is flawed because they overlook several pertinent provisions of the Vehicle Code.

Vehicle Code section 4000.1, subdivision (a) requires "upon initial registration, and upon transfer of ownership and registration, of any motor vehicle . . . and upon registration of a motor vehicle previously registered outside this state . . . a valid certificate of compliance or a certificate of noncompliance, as appropriate, issued in accordance with Section 44015 of the Health and Safety Code."[5]

In a similar vein, Vehicle Code section 4000.3, subdivision (a) "require[s] biennially, upon renewal of registration of any motor vehicle . . . a valid certificate of compliance issued in accordance with Section 44015 of the Health and Safety Code. The [D]epartment [of Motor Vehicles], in consultation with the Department of Consumer Affairs, shall develop a schedule

---

ownership, registration card, certificate, license, license plate, device issued pursuant to Section 4853, special plate, or permit.

"(2) Utters, publishes, passes, or attempts to pass, as true and genuine, any false, altered, forged, or counterfeited matter listed in subdivision (a) knowing it to be false, altered, forged, or counterfeited."

[4]The entire text of the relevant portion of the statute is set forth *ante* in footnote 3.

[5]Health and Safety Code section 44015 sets forth the requirements for issuance of a smog certificate.

under which vehicles shall be required biennially to obtain certificates of compliance."

Thus, contrary to defendants' argument, the Vehicle Code *does* provide for the issuance of a smog certificate because it requires presentation of that certificate upon initial registration of a vehicle, upon transfer of ownership of a vehicle, upon registration of a vehicle brought from another state, and upon the biennial renewal of the vehicle's registration. This means that a smog certificate *is* a certificate within the meaning of Vehicle Code section 4463 so that defendants' fraudulent production of smog certificates violated that section.

Defendants' contrary interpretation that the statute only prohibits creation of fraudulent certificates evidencing ownership or registration of a vehicle or identification of a driver would mean that the additional term "certificate" was mere surplusage. A basic principle of statutory construction is that an interpretation which renders statutory language surplusage is to be avoided. (*People* v. *Craft* (1986) 41 Cal.3d 554, 560 [224 Cal.Rptr. 626, 715 P.2d 585].) The Legislature enacted Vehicle Code section 4463 in 1959, decades before the smog testing program was initiated. Inclusion of the generic term "certificate" evidences legislative intent to criminalize the fraudulent production of certificates then not either identified or in existence as long as the certificates were provided for by the Vehicle Code. In other words, the Legislature's use of the word "certificate" in addition to the particular documents identified indicates that it did *not* intend to place limits on what type of vehicular-related certificates were covered as long as the certificate was otherwise required by the Vehicle Code.

Defendants next urge that the descriptive heading of Vehicle Code section 4463 indicates that the statute does not embrace smog certificates. They rely upon the black-lettered heading appearing in Deering's California Codes. The heading reads: "Alteration or falsification of evidence of ownership, registration, or identification; Possession or sale of identification number plate." This argument lacks merit. The authorities relied upon in which a heading was utilized to ascertain legislative intent are distinguishable because they involved headings which were part of the law at the time the law was enacted. This heading, on the other hand, is, as explained in the foreword to the Deering's code, "added by the publisher and [is] unofficial."[6] ▮ "The editor's heading . . . [is] no part of the act as adopted by the legislature which a reading thereof will reveal. . . . It is true that the

---

[6]A similar analysis applies to the headings in the West's codes. As explained in the foreword to that series, ". . . section headings for West's codes are prepared by the West editorial staff . . . ." The fact that these headings are private editorial creations explains why

headings of certain sections of the codes have been held to be a part thereof, but the rule is applied only when such heading is a part of the section at the time of its adoption as the law of the state. [Citations.]" (*Kahrs* v. *County of Los Angeles* (1938) 28 Cal.App.2d 46, 49 [82 P.2d 29]; see also 58 Cal.Jur.3d (1980) Statutes, § 166, p. 572 ["Unofficial headings, of course, have no controlling effect on the interpretation of a statute, section headings adopted, not by the legislature, but by editors, are of this nature." (Fns. omitted.)].)

 Defendants also take out of context a phrase in Vehicle Code section 4463 to argue that forging smog certificates is not prohibited by this statute. They point to the phrase in subdivision (a)(1) that states *one manner* in which the statute is violated is if one "[a]lters, forges, counterfeits, or falsifies . . . any such document, device, or plate *with intent to represent it as issued by the* [*D*]*epartment* [*of Motor Vehicles*] . . . ." (Italics added.) Noting that smog certificates are not issued by the DMV, defendants then argue that the fraudulent production of such documents could not therefore be proscribed by the statute. The fallacy of this argument is, of course, the fact that the phrase upon which defendants rely is written in the disjunctive to the other portions of the statute. That is, it merely sets forth one of the many alternative ways in which the statute can be violated.

 The above analysis disposes of defendants' reliance upon the principle that a "defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in a statute." (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) They contend: "Application of this rule to the case at bar would require resolving any doubt inherent in categorizing the smog certificates in [their] favor." The predicate for application of this principle—the existence of a reasonable doubt as to the meaning of the statute—is absent here for the reasons just explained. "[I]t must be emphasized that the canon entitles the defendant only to the benefit of every *realistic* doubt. This rule of construction ' "is not an inexorable command to override common sense and evident statutory purpose. . . ." ' [Citation.] . . . [T]he rule does not 'require[] that a penal statute be strained and distorted in order to exclude conduct clearly intended to be within its scope—nor does any rule require that the act be given the "narrowest meaning." It is sufficient if the words are given their fair meaning in accord with the evident intent of [the legislative body].' " (*People* v. *Anderson* (1987) 43 Cal.3d 1104, 1145-1146 [240 Cal.Rptr. 585, 742 P.2d 1306], italics in original.)

the heading to Vehicle Code section 4463 in the West's code is different from that found in the Deering's code.

■ Lastly, defendants point to the fact that no decisional law has yet interpreted the statute to include fraudulent issuance of smog certificates. That point is hardly relevant. Few cases have examined the statute. None cited by defendants is on point. *People* v. *Wilkins* (1972) 27 Cal.App.3d 763, 770-773 [104 Cal.Rptr. 89], simply held that Vehicle Code section 4463 was violated by the possession of counterfeit *blank* vehicle registration forms. *People* v. *Stone* (1961) 195 Cal.App.2d 282, 288-289 [15 Cal.Rptr. 737], found sufficient evidence to uphold the defendant's conviction of Vehicle Code section 4463 based upon his production of fake drivers' licenses. Contrary to what defendants seem to suggest, nothing in either case supports their claim that the statute does not prohibit fraudulent issuance of smog certificates. The other two cases cited, *People* v. *Martinez* (1992) 10 Cal.App.4th 1001 [12 Cal.Rptr.2d 838] [conviction of forged ownership certificate] and *People* v. *Superior Court* (1972) 6 Cal.3d 704 [100 Cal.Rptr. 319, 493 P.2d 1183] [prosecution for possession of forged or altered driver's license], do not involve any issue of statutory construction or sufficiency of the evidence and thus add nothing to defendants' argument.

B. *The Jury Was Properly Instructed About Vehicle Code Section 4463*

Defendants next contend that the jury was improperly precluded from determining whether the forged smog certificates were certificates within the meaning of Vehicle Code section 4463. We disagree.

The court instructed the jury[7] as follows:

"The defendants are charged in Counts Two, Four, Six, Eight, and Ten of the Information with the commission of the crime of Uttering a False Certificate in violation of section 4463(a)(2) of the California Vehicle Code, a felony.

"Any person who, with intent to prejudice, damage, or defraud, utters, publishes, passes, or attempts to pass, as true and genuine, any false, altered, forged or counterfeited smog check certificate, knowing it to be false, altered, forged or counterfeited, is guilty of the crime of uttering a false certificate, in violation of section 4463(a)(2) of the Vehicle Code.

"To find a Defendant guilty of a violation of Vehicle Code section 4463(a)(2), uttering a false certificate, you must find all of the following to be true:

---

[7]It is unclear if defendants' counsel raised this particular objection below. During the reported discussion on jury instructions, one attorney cryptically said: "I object, Your Honor, to the last paragraphs of the 502(c)(1) and 4463(a)(2) as to the element part." The other attorney joined in the objection, which was overruled.

"1. Defendant uttered, published or passed, as true and genuine a false, altered, forged, or counterfeited smog check certificate.

"2. Defendant knew the smog check certificate to be false, altered, forged, or counterfeited.

"3. Defendant intended to prejudice, damage, or defraud."

Defendants now contend: "Since the above-quoted instruction stated as a matter of law that 'smog check certificates' were included in the prohibition of Section 4463, subdivision (a)(2), it removed this issue from the jury's consideration and amounted to a directed verdict on that element, depriving [defendants] of the right to a jury trial on the issue."

Defendants rely upon *People* v. *Figueroa* (1986) 41 Cal.3d 714 [224 Cal.Rptr. 719, 715 P.2d 680] and *United States* v. *Gaudin* (1995) 515 U.S. 506 [115 S.Ct. 2310, 132 L.Ed.2d 444] and their progeny. This body of decisional law does not support their contention.

In *People* v. *Figueroa, supra,* 41 Cal.3d 714, the defendant was prosecuted for sale of unqualified securities. The trial court instructed the jury that the promissory notes in question were securities within the meaning of the Corporations Code. The California Supreme Court held that although the definition of a security is a question of law for the court to determine, whether a particular *document* satisfies that definition is a question of fact for the jury to determine even if the evidence is undisputed. The court therefore concluded that the instruction was tantamount to a directed verdict against the defense and usurped the jury of its constitutionally mandated factfinding function.

In *United States* v. *Gaudin, supra,* 515 U.S. 506, the defendant was charged with making material false statements on federal loan documents. The trial court instructed the jury that it (the court) had decided that the allegedly false statements were material. The United States Supreme Court found this procedure denied the accused the constitutional right to have the jury determine whether the prosecutor has established beyond a reasonable doubt each and every element of the crime charged.

The error committed in *Figueroa* and *Gaudin* did not occur in this case. The trial court did *not* instruct the jury that a particular element of the crime had been established. The court did not improperly instruct the jury that the exhibits which the prosecutor represented were the forged smog certificates were smog certificates as a matter of law. Instead, the court simply and

correctly instructed the jury that smog certificates were certificates within the meaning of Vehicle Code section 4463. That determination was a question of law lying exclusively within the province of the trial court. The jury was still permitted to determine the fact whether or not the exhibits themselves were smog certificates. Defendants' constitutional right to a jury trial was therefore not impinged. (See, e.g., *People* v. *Brown* (1988) 46 Cal.3d 432 [250 Cal.Rptr. 604, 758 P.2d 1135] [trial court properly instructed the jury that a Garden Grove police officer was a peace officer within the meaning of Pen. Code, § 190.2, subd. (a)(7) and left to the jury's determination whether a named officer was a Garden Grove police officer];[8] *People* v. *James* (1998) 62 Cal.App.4th 244 [7 Cal.Rptr.2d 7] [trial court properly instructed the jury that manufacturing methamphetamine was an inherently dangerous felony as a matter of law and left to the jury's determination whether the defendant committed that felony and whether the deaths were causally connected to commission of that felony]; and *People* v. *Runnion* (1994) 30 Cal.App.4th 852 [36 Cal.Rptr.2d 203] [trial court properly instructed the jury that the legal definition of a firearm included a handgun and left to the jury's determination whether the weapon in the case was a handgun].)

C. *Substantial Evidence Supports Defendant Avanessian's Convictions on a Theory of Aiding and Abetting**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgments are affirmed.

Epstein, J., and Dau, J.,† concurred.

Appellants' petition for review by the Supreme Court was denied March 1, 2000.

---

[8]Defendants' reliance upon *People* v. *Lara* (1994) 30 Cal.App.4th 658 [35 Cal.Rptr.2d 886] to support a contrary conclusion is misplaced. There, the appellate court found that the trial court had erred when it instructed the jury that a San Jose Police Department officer was a "peace officer." As the *Lara* court noted in distinguishing its holding from *People* v. *Brown, supra,* 46 Cal.3d 432, the statutory definition of a "peace officer" found in Penal Code section 830.1 had been significantly amended since *Brown* had been decided and the submitted instruction did not take that amendment into account. (*People* v. *Lara, supra,* 30 Cal.App.4th at pp. 668-669, including fn. 5.)

*See footnote, *ante,* page 635.

†Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.