Filed 9/19/14  P. v. Quinones CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038943 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1072479) |
| v. | |
| MARTIN QUINONES, | |
| Defendant and Appellant. | |

Defendant Martin Quinones was convicted by jury trial of one count of forcible lewd conduct on a child under 14 (Pen. Code, § 288, subd. (b)(1)),[1] five counts of lewd conduct on a child aged 14 or 15 (§ 288, subd. (c)(1)), three counts of assault with intent to commit sexual penetration (§§ 220, 289), and one count of simple assault (§ 240).  The trial court imposed a 20-year prison term.[2]  On appeal, defendant contends that (1) two of the assault with intent to commit sexual penetration counts are not supported by substantial evidence of the necessary intent, (2) the forcible lewd conduct count is not

---

[1]     Subsequent statutory references are to the Penal Code unless otherwise specified.

[2]     The court imposed a two-year term for one of the lewd conduct counts, a fully consecutive six-year term for the forcible lewd conduct count, and fully consecutive four-year terms for the three assault with intent to commit sexual penetration counts.  A concurrent six-month jail term was imposed for the assault count, and that sentence was deemed served.

supported by substantial evidence of force or duress, (3) the simple assault conviction is barred by the statute of limitations, (4) the court prejudicially erred in failing to instruct the jury on the lesser included offense of simple assault as to the three assault with intent to commit sexual penetration counts, and (5) the trial court prejudicially erred in admitting expert testimony about child sexual abuse accommodation syndrome (CSAAS). We reject his contentions and affirm the judgment.

## I. Background

D. Doe was born in 1994. When Doe was three or four years old, defendant came to live with Doe and her mother. In 2000, defendant and Doe's mother had a daughter together. Doe considered defendant to be her "stepdad." When Doe was about nine or 10 years old, defendant began molesting her. On several occasions, when Doe was between nine and 12 years old, defendant came into her room at night, pulled down her pants, and fondled her buttocks. She also thought he might have tried to put his fingers and his penis into her buttocks on these occasions. When Doe was 12 or 13 years old and in her room watching television, defendant came into her bedroom, switched the television to a pornographic channel, forced Doe to watch the television, and forced her to touch his penis.

When Doe was 13 years old, defendant came into Doe's bedroom, covered her mouth with his hand, pulled her down to the floor, and tried to remove her pants. When Doe was 14 years old, defendant came into the living room and tried to remove Doe's pants. During the summer when Doe was 14 years old, defendant stuck his hand inside her shirt and squeezed her breast.[3] In September 2009, when Doe was 15 years old,

---

[3] Doe also testified about a couple of other incidents. When Doe was 14 or 15 years old, Doe and defendant were in the living room, and defendant pulled down his pants and exposed his flaccid penis. Defendant also once texted Doe a picture of his penis.

defendant came into the bathroom naked while Doe was taking a shower, grabbed Doe from behind, and pulled Doe's naked body towards his body. Doe pushed him away. He left the bathroom, but then he returned and masturbated until he ejaculated into the shower. In October 2009, when Doe was 15 years old, defendant put his hand on Doe's vagina.

Doe was "scared" to tell her mother about the molestations. She was also "scared of, like, people judging and, like, blaming things on me." Doe was concerned that people would think "[t]hat it was like my fault, sort of." In March 2010, when Doe was 15 years old, she told her aunt about the molestations. The next day, despite her reluctance, she reported the molestations to law enforcement at her aunt's suggestion. Doe made a recorded telephone call to defendant that night. During that conversation, Doe accused defendant of molesting her, and defendant repeatedly responded "I already stop doing that shit."[4] Doe asked defendant to "promise me that you're not going to do that again," and defendant replied "Yes." Defendant told Doe's mother, who had overheard part of defendant's side of the conversation, that he had promised Doe that he would not "drink again."

## II. Discussion

### A. Substantial Evidence

Defendant challenges the sufficiency of the evidence to support two of the assault with intent to commit sexual penetration counts and the forcible lewd conduct count.

"The role of an appellate court in reviewing the sufficiency of the evidence is limited. The court must 'review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence

---

[4]     Doe told the sexual assault response team nurse that the last molestation had been in November 2009.

3

which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citations.] [¶] The same standard applies to the review of circumstantial evidence. [Citation.] The court must consider the evidence and all logical inferences from that evidence . . . . But it is the *jury*, not the appellate court, which must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] Therefore, an appellate court may not substitute its judgment for that of the jury. If the circumstances reasonably justify the jury's findings, the reviewing court may not reverse the judgment merely because it believes that the circumstances might also support a contrary finding." (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138-1139.)

### 1. Counts 7 and 9

Counts 8, 10, and 12 charged defendant with lewd conduct on a child aged 14 or 15. Counts 7, 9, and 11 charged defendant with assault with intent to commit forcible sexual penetration.[5] Counts 7 and 8 were based on the shower incident. Counts 9 and 10 were based on the incident where defendant covered Doe's mouth and tried to remove her pants in her bedroom. Counts 11 and 12 were based on the incident where defendant put his hand on Doe's vagina. The jury was instructed that counts 7 and 8 were alternatives, as were counts 9 and 10, and counts 11 and 12. Defendant does not challenge the sufficiency of the evidence to support counts 8, 10, 11, and 12.[6]

---

[5] It is not clear why these counts were prosecuted as assaults with intent to commit *forcible* sexual penetration (§ 289, subd. (a)(1)) rather than as assaults with intent to commit sexual penetration *on a person under 16* (§ 289, subd. (i)). Section 220 provides the same punishment regardless of which of these two offenses is intended. (§ 220, subd. (a)(1).)

[6] He also does not challenge the sufficiency of the evidence to support counts 5 and 6, which were lewd conduct counts based on the breast-touching incident and his attempt to remove Doe's pants in the living room.

Defendant claims that counts 7 and 9 cannot be upheld because the prosecution failed to establish that he intended to accomplish a forcible sexual penetration during the shower incident and the pants-removal incident in Doe's bedroom.

We first consider defendant's contention regarding count 7.[7] Doe testified at trial that she was taking a shower when defendant entered the bathroom naked. He was able to surprise her in the shower because she was listening to music while she showered. Defendant stepped into the shower and grabbed Doe from behind. He pulled her up against him, and she pushed him away and told him to leave. Defendant left, but he returned a couple of minutes later. He opened the shower curtain and massaged his erect penis until he ejaculated as Doe tried to cover herself with the shower curtain.

Defendant claims that this evidence did not show that he intended to sexually penetrate Doe by force or duress because he did not attempt to overcome her resistance. He maintains that the evidence reflects that he "either never intended penetration or chose to forgo any intended penetration rather than overcome resistance."

"Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction." (*People v. Bloom* (1989) 48 Cal.3d 1194, 1208.) Here, there was ample circumstantial evidence that defendant's intent was to forcibly penetrate Doe. First, this event must be taken in context with the events that preceded it. By the time of the shower incident, defendant had been molesting Doe for about four years. His molestations had repeatedly focused on her buttocks with both his fingers and his penis making contact with her buttocks. All of these molestations had been plainly nonconsensual and involved some degree of force. Defendant forcibly removed Doe's pants or tried to do so, covered her

---

[7]     Doe testified at trial about the shower incident. She had also told sheriff's deputies about this incident when she first reported the molestations.

mouth to prevent her from crying out, forced her hand toward his penis against her resistance, and pulled her off her bed onto the floor. The events that took place before the shower incident demonstrated that defendant was willing to use force to overcome Doe's will. The shower incident was of the same character. Defendant did not just get into the shower and leave on his own. He grabbed Doe and forcibly pulled her buttocks toward his naked and erect penis. The fact that Doe was able to fight off his forcible advance did not establish the absence of the requisite intent but instead suggested only that defendant recognized that he would not be able to easily overcome Doe's resistance and decided to abandon his original intent.

We turn then to count 9. When Doe was 13 years old, defendant came into Doe's bedroom and covered her mouth with his hand. She tried to call out for her sister because she could not breathe, but defendant proceeded to pull her down to the floor and try to remove her pants. Defendant again claims that this evidence shows that he did not intend to utilize force. Not so. The jury could easily find that defendant intended to use force because he *did use force* by covering Doe's mouth, pulling her to the floor, and trying to remove her pants. Nor was there a lack of evidence that defendant intended to sexually penetrate Doe. Merely fondling Doe would not have required defendant to cover her mouth, remove her pants, or pull her to the floor. This conduct provided ample support for an inference that defendant intended a sexual penetration. The mere fact that defendant did not follow through on his intent after Doe began crying reflected nothing more than that defendant had second thoughts and decided to abandon the assault rather than risk that Doe's crying would lead to disclosure of his molestation of her.

## 2. The Forcible Lewd Conduct Count

The forcible lewd conduct conviction was based on defendant forcing Doe to watch something on television that she identified as "pornographic" while he forced her hand to touch his erect penis. He claims that this count was not supported by substantial evidence of force or duress. The evidence demonstrates otherwise.

6

When Doe was 12 or 13 years old and in her room watching television, defendant came in and changed the channel to "something like the Playboy channel." Defendant grabbed Doe's head and forced her to look at the television. Doe did not want to look at the television because it was "pornographic." Defendant pulled down his pants to expose his erect penis, and he pulled Doe's hand toward his penis. Doe tried to pull her hand away. At trial, Doe initially testified that her hand got within three inches of defendant's penis before she was able to pull her hand away. She had told a sheriff's deputy that the back of her hand had actually touched defendant's penis. On recross-examination, Doe testified that defendant had forced her to touch his penis. The prosecutor relied on both duress and fear.

Defendant argues that there was insufficient evidence of force because his conduct in forcing Doe's hand to touch his penis was not substantially different from or greater than that necessary to accomplish the touching itself. "A defendant uses 'force' if the prohibited act is facilitated by the defendant's use of physical violence, compulsion or constraint against the victim other than, or in addition to, the physical contact which is inherent in the prohibited act." (*People v. Bolander* (1994) 23 Cal.App.4th 155, 163 (Mihara, J. concurring).) "The evidentiary key to whether an act was forcible is not whether the distinction between the 'force' used to accomplish the prohibited act and the physical contact inherent in that act can be termed 'substantial.' Instead, an act is forcible if force facilitated the act rather than being merely incidental to the act." (*Id.* at pp. 163-164.) "[A]cts of grabbing, holding and restraining that occur in conjunction with the lewd acts themselves" are sufficient to support a finding that the lewd act was committed by means of force. (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1005 (*Alvarez*).)

Defendant did not merely cause his penis to come into contact with Doe's hand. He first established his physical dominance by physically forcing Doe to look at the "pornographic" content on the television and then grabbing her hand and overcoming her

7

resistance to force her to touch his penis. This level of force was "in addition to" that inherent in the physical act of contact between Doe's hand and defendant's penis and facilitated, rather than being mere incidental to, the lewd touching. Consequently, it was sufficient to support a finding that the lewd act was committed by means of force.

## B. Statute of Limitations

Defendant contends that the simple assault count must be reversed because it was barred by the statute of limitations.

Defendant was charged with two counts of aggravated sexual assault (sodomy) on a child under 14 (§ 269). These two offenses were alleged to have occurred between May 2003 and May 2006. The original complaint was filed in March 2010. Prior to the instruction conference, defendant's trial counsel told the court: "I think there's going to be a lot of lesser includeds, so that's something I'll look into that tonight, too." At the subsequent instruction conference, the court noted that it would be instructing on simple assault as a lesser included offense of the aggravated sexual assault counts, and "it's my understanding that although there's a lesser included for the 220 [assault with intent to commit sexual penetration], you're not requesting that instruction; is that correct?" Defendant's trial counsel responded: "That's correct, Your Honor."

Defendant contends that the simple assault count is barred by the statute of limitations. The Attorney General concedes that the statute of limitations for simple assault had expired by the time the complaint was filed, but she maintains that defendant forfeited this contention by failing to raise it below. She relies on *People v. Stanfill* (1999) 76 Cal.App.4th 1137 (*Stanfill*). In *Stanfill*, the First District Court of Appeal reasoned that permitting a defendant to request or acquiesce in the giving of instructions on a time-barred lesser included offense would encourage gamesmanship. It held "that a defendant forfeits the right to complain on appeal of conviction of a time-barred lesser included offense where the charged offense was not time-barred and the defendant either

requested or acquiesced in the giving of instructions on the lesser offense. In other words, a defendant must raise the issue in the trial court in order to preserve it for appeal." (*Stanfill*, at p. 1150.) Defendant disagrees with *Stanfill*'s reasoning, but we agree with that reasoning. A defendant should not be allowed to seek or acquiesce in obtaining the benefit of the jury's consideration of a lesser included offense and then be permitted to attack the provision of that benefit on the ground that the offense was time barred.

This is not a situation like the one in *People v. Beasley* (2003) 105 Cal.App.4th 1078 (*Beasley*), where "nothing in the record indicate[d] [the defendant] requested or acquiesced in the instruction on assault as a lesser included offense . . . ." (*Beasley*, at pp. 1089-1090.) Here, defendant's trial counsel explicitly stated in advance of the instruction conference that he was going to examine the issue of lesser included instructions. After the court stated at the instruction conference that it would be instructing on simple assault as a lesser included offense of aggravated assault, defendant's trial counsel expressly confirmed that he was not seeking such instructions as to certain other counts. The only conclusion that can be drawn from these facts is that defendant's trial counsel made a strategic choice to have the trial court instruct on simple assault as a lesser included offense of the aggravated assault counts, which were the most serious counts defendant was facing. As a result, defendant forfeited this claim.

### C. Failure to Give Lesser Included Instruction

Defendant contends that the trial court prejudicially erred in failing to instruct the jury on the lesser included offense of simple assault as to the three assault with intent to commit sexual penetration counts. The Attorney General contends that the trial court's instructional omission was invited error so defendant cannot challenge it on appeal.

9

## 1. Background

Defendant was charged with two counts of aggravated sexual assault on a child under 14, two counts of forcible lewd conduct on a child under 14, five counts of lewd conduct on a child aged 14 or 15, and three counts of assault with intent to commit sexual penetration. Defendant's defense at trial was that Doe had made up all of her allegations, and he had never molested her at all.

On the afternoon that the court had anticipated going over jury instructions, the court noted that it did not have enough time to do so that day. The court and counsel had a brief discussion about some of the instructional issues that they anticipated. Defendant's trial counsel told the court: "I think there's going to be a lot of lesser includeds, so that's something I'll look into that tonight, too. I don't know if [the prosecutor] included those." The court asked counsel to "sort of get together before that [(the next day's instruction conference)] because we got 12 counts and it needs to be really really clear to the jury as they go through each of those counts. So if you can draft one document on what count and what's lesser included, lesser related so we can come to some decision so I can define for them what that means."

The following morning, the court began the instruction conference by stating: "We've had a full discussion on jury instructions and we're going to be giving the following . . . ." The court stated that it would be instructing on simple assault as a lesser included offense of the aggravated sexual assault counts and the lewd conduct counts, and battery as a lesser included offense of the lewd conduct counts. It then said to defendant's trial counsel, "it's my understanding that although there's a lesser included for the 220 [assault with intent to commit sexual penetration], you're not requesting that instruction; is that correct?" Defendant's trial counsel responded: "That's correct, Your Honor."

The jury was instructed on simple assault as a lesser included offense of the two aggravated sexual assault on a child counts. The jury was also instructed that simple

assault and simple battery were lesser included offenses of the five lewd conduct on a child aged 14 or 15 counts. The jury was not instructed on simple assault as a lesser included offense on the assault with intent to commit sexual penetration counts. The jury hung on one of the aggravated sexual assault counts and found defendant guilty of the lesser included offense of simple assault as to the other aggravated sexual assault count.

## 2. Analysis

The Attorney General contends that defendant may not obtain appellate review of this contention because, after considering the matter, his trial counsel invited the error by expressly informing the trial court that he did not want the lesser included instructions that defendant now claims the court erred in omitting. Defendant claims that invited error does not apply here because his trial counsel did not explicitly identify a tactical basis for his express decision to not request these instructions.

" '[A] defendant may not invoke a trial court's failure to instruct on a lesser included offense as a basis on which to reverse a conviction when, for tactical reasons, the defendant persuades a trial court not to instruct on a lesser included offense supported by the evidence. [Citations.] In that situation, the doctrine of invited error bars the defendant from challenging on appeal the trial court's failure to give the instruction.' [Citation.]" (*People v. Horning* (2004) 34 Cal.4th 871, 905.) However, " '[t]he invited error doctrine will not preclude appellate review if the record fails to show counsel had a tactical reason for requesting or acquiescing in the instruction.' [Citation.]" (*People v. Moore* (2011) 51 Cal.4th 386, 410.)

Exactly what the record must show to demonstrate invited error was identified by the California Supreme Court in *People v. Cooper* (1991) 53 Cal.3d 771 (*Cooper*). "We know counsel believed it was in his client's interest not to have the second degree murder instructions. We know counsel was aware the court would give the instructions if he did not object. We know counsel was aware his actions would, and did, cause the court not to give instructions it otherwise would have given. . . . 'The issue centers on whether

11

counsel deliberately caused the court to fail to fully instruct . . . .' [Citation.] This record shows that counsel did. [¶] We therefore hold that the record must show only that counsel made a conscious, deliberate tactical choice between having the instruction and not having it. If counsel was ignorant of the choice, or mistakenly believed the court was not giving it to counsel, invited error will not be found. If, however, the record shows this conscious choice, it need not additionally show counsel correctly understood all the legal implications of the tactical choice. Error is invited if counsel made a conscious tactical choice." (*Cooper*, at p. 831.)

In *People v. Lara* (1994) 30 Cal.App.4th 658 (*Lara*), the issue was whether the trial court should have given lesser included offense instructions on simple assault in a prosecution for assault on a peace officer. This court found invited error. "[T]he trial court expressly acknowledged its general duty to instruct on lessers but was concerned that giving them here would contradict the defense of excessive force. When the court asked for defense counsel's thoughts on the matter, she said she was 'not requesting for any lessers[.]' The court then said, 'That's in accordance with what you said yesterday. I said it this morning, but—okay.'" (*Lara*, at p. 673.) Applying *Cooper*, this court found that defense counsel, knowing that the trial court was aware of its duty to give the instructions, explicitly stated that she was not requesting them. "In this context, defense counsel's comment was the equivalent of saying she did not want lesser instructions," which constituted a conscious, tactical decision that qualified as invited error. (*Lara*, at p. 673.)

Under *Cooper* and *Lara*, we find that defendant's trial counsel invited the error that defendant challenges on appeal. The key question is "'whether counsel deliberately caused the court to fail to fully instruct . . . .'" (*Cooper*, *supra*, 53 Cal.3d at p. 831.) Defendant's trial counsel explicitly told the trial court that he would consider which lesser included instructions he desired. The trial court expressly acknowledged its obligation to give lesser included instructions as to the assault with intent to commit

12

sexual penetration counts. Defendant's trial counsel knew that the court would give such instructions unless he chose otherwise. He then made an express decision to not request them, knowing that this decision would cause the court not to give them. The record expressly demonstrates each of the factors that the California Supreme Court identified in *Cooper* as essential to invited error. Consequently, in this context, as in *Lara*, invited error applies, and defendant may not obtain appellate review of this contention.

### D. CSAAS Evidence

Defendant contends that CSAAS evidence is never admissible and, in any case, the CSAAS evidence in this case "exceeded any permissible bounds" for such evidence.

### 1. Background

Defendant moved in limine to exclude CSAAS evidence on several grounds including that it violated due process, was irrelevant, and was not a proper subject for expert testimony. The prosecution countered that the evidence was admissible, relevant, and proper. The court found the evidence to be relevant, proper, and admissible.

Doe testified at trial that defendant had been the primary breadwinner in their household. After she reported the molestations, the family lost its home, and life was "hard" for them. Doe "[i]n some way" regretted reporting the molestations, and she sometimes thought "things would be better" if she had not done so. Doe's trial testimony differed in significant respects from her preliminary examination testimony and her statements to sheriff's deputies. At trial, she downplayed the severity of the molestations and largely recanted her earlier statements that defendant had actually penetrated her anus and vagina.

Lewis testified about the various "myths" that CSAAS is "designed to dispel." These myths included that the child would cry out to stop the molestations, report the molestations immediately, and shun the molester. Lewis explained that CSAAS is "not diagnosis, and it can't tell whether a child has been abused or not . . . ." CSAAS focuses

on five "categories": secrecy; helplessness; entrapment and accommodation; delayed, conflicted, unconvincing disclosure; and retraction. Lewis testified that it was common for child sexual abuse victims to allow the abuse to continue for a long time, to delay reporting the abuse, to report some instances of abuse at one time and other instances at a different time, and to partially retract reports of abuse.

The court instructed the jury with CALCRIM No. 226 on evaluating the testimony of a witness. The jury was also instructed that Lewis's testimony "is not evidence that the defendant committed any of the crimes charged against him. [¶] You may consider this evidence only in deciding whether or not [Doe's] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of her testimony."

### 2. Analysis

Defendant claims that expert testimony on CSAAS is wholly inadmissible because it invades the province of the jury by expressing an opinion on a witness's credibility. Defendant cites cases from other states that credit this argument and bar CSAAS evidence, but California courts have long rejected this argument and permitted the admission of CSAAS evidence.

"The governing rules are well settled. First, the decision of a trial court to admit expert testimony 'will not be disturbed on appeal unless a manifest abuse of discretion is shown.' [Citations.] Second, 'the admissibility of expert opinion is a question of degree. The jury need not be wholly ignorant of the subject matter of the opinion in order to justify its admission; if that were the test, little expert opinion testimony would ever be heard. . . . [E]ven if the jury has some knowledge of the matter, expert opinion may be admitted whenever it would "assist" the jury. It will be excluded only when it would add nothing at all to the jury's common fund of information, i.e., when "the subject of inquiry is one of such common knowledge that men of ordinary education could reach a

14

conclusion as intelligently as the witness"'" [citation]." (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1299-1300 (*McAlpin*).)

"'[CSAAS] expert testimony is needed to disabuse jurors of commonly held misconceptions about child sexual abuse, and to explain the emotional antecedents of abused children's seemingly self-impeaching behavior.'" (*McAlpin*, *supra*, 53 Cal.3d at p. 1301.) There are, of course, limitations on the use of CSAAS evidence. "First, the CSAAS evidence must be addressed to a specific 'myth' or 'misconception' suggested by the evidence. [Citation.] Second, 'if requested the jury must be admonished "that the expert's testimony is not intended and should not be used to determine whether the victim's molestation claim is true. . . . The evidence is admissible *solely* for the purpose of showing that the victim's reactions as demonstrated by the evidence are not inconsistent with having been molested."'" (*People v. Housley* (1992) 6 Cal.App.4th 947, 955.)

Defendant argues that Lewis's testimony was irrelevant because jurors no longer harbor any misconceptions about the behavior of child sexual abuse victims. Expert testimony is admissible if it will add to the jury's knowledge about a subject. Lewis clearly had considerably more knowledge than jurors had about the behavior of alleged child sexual abuse victims as a result of his many years of experience in this field. Thus, his testimony on this subject would assist the jurors in understanding such conduct. Lewis's testimony about CSAAS addressed several subjects that were relevant to Doe's testimony. Doe did not immediately report the molestations. She allowed the molestations to continue for years, gave inconsistent reports about the abuse, and partially retracted her earlier statements at trial. Lewis's testimony gave the jury important background information about how child sexual abuse victims may react to the abuse so that the jury could understand "'the emotional antecedents of abused children's seemingly self-impeaching behavior.'" (*McAlpin*, *supra*, 53 Cal.3d at p. 1301.)

15

Defendant asserts that CSAAS evidence should be inadmissible because it conflicts with CALCRIM No. 226. That instruction tells the jurors to use their common sense and experience and to judge each witness by the same standards. In defendant's view, CSAAS evidence tells the jury to "distrust" their own experiences, rely on the expert's testimony instead, and "judge the alleged victim's testimony by different standards." No conflict exists. Nothing in CALCRIM No. 226 precluded the jurors from taking into account Lewis's testimony as an adjunct to their own common sense and experience. Nor did Lewis's testimony suggest that Doe's credibility should be evaluated using different standards than those governing other witnesses. Lewis provided the jury with information for it to consider in evaluating under CALCRIM No. 226 the importance of Doe's inconsistencies and other conduct with respect to her credibility. Lewis never told the jurors to disregard an alleged child sexual abuse victim's inconsistencies or conduct.

Defendant also contends that Lewis's testimony "went beyond permissible bounds." The only authority he cites is *People v. Bowker* (1988) 203 Cal.App.3d 385 (*Bowker*). In *Bowker*, the issue was whether the CSAAS evidence had been improperly used to show that the child had been abused rather than properly utilized to dispel misconceptions. "It is one thing to say that child abuse victims often exhibit a certain characteristic or that a particular behavior is not inconsistent with a child having been molested. It is quite another to conclude that where a child meets certain criteria, we can predict with a reasonable degree of certainty that he or she has been abused. The former may be appropriate in some circumstances; the latter—given the current state of scientific knowledge—clearly is not." (*Bowker*, at p. 393.)

The *Bowker* court concluded that CSAAS evidence is properly utilized when it is limited to relevant misconceptions and does not delve into whether the molestation actually occurred, and the jury is "instructed simply and directly that the expert's testimony is not intended and should not be used to determine whether the victim's

16

molestation claim is true." (*Bowker*, *supra*, 203 Cal.App.3d at p. 394.) The use of the CSAAS evidence in *Bowker* did not comply with these limitations. Portions of the expert's testimony in *Bowker* suggested that CSAAS evidence could be used to determine whether a molestation occurred. (*Bowker*, at p. 395.) In addition, the limiting instruction stated only that the expert "'will not be testifying as to whether the children in this case were molested or not.'" (*Bowker*, at p. 389.) The *Bowker* court concluded that the nature of the testimony exceeded proper bounds, although the error was deemed harmless. (*Bowker*, at p. 395.)

The admission of Lewis's testimony did not exceed the limitations set forth in *Bowker*. Lewis's testimony was largely limited to relevant misconceptions and did not suggest that CSAAS evidence could be used to determine whether a molestation occurred. In fact, he explicitly stated that CSAAS is "not diagnosis, and it can't tell whether a child has been abused or not . . . ." And the trial court's limiting instruction told the jury "simply and directly" (*Bowker*, *supra*, 203 Cal.App.3d at p. 394) that CSAAS evidence "is not evidence that the defendant committed any of the crimes charged against him" and could be considered "only in deciding whether or not [Doe's] conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of her testimony." We conclude that the CSAAS evidence was kept within proper bounds, and the jury's consideration of this evidence was properly limited. Hence, we find no error in the admission of Lewis's testimony. Since there was no error, defendant's due process and jury trial rights were not violated.

### III. Disposition

The judgment is affirmed.

17

_____

Mihara, J.

WE CONCUR:


_____

Elia, Acting P. J.


_____

Grover, J.

18