Filed 12/8/21  P. v. Leggett CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079060 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CC079620) |
| MIEKO MICHELLE LEGGETT, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Santa Clara County, Arthur Bocanegra, Judge.  Reversed and remanded with instructions.

Jonathan Grossman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Rob Bonta, Attorney Generals, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, René A. Chacón and Masha A. Dabiza, Deputy Attorneys General for Plaintiff and Respondent.

INTRODUCTION

Mieko Michelle Leggett appeals from the summary denial of her petition to vacate a first degree murder conviction under Penal Code section 1170.95.[1] The trial court found she was not entitled to relief because the record of conviction, including the jury's true finding on a robbery-murder special circumstance and the appellate opinion from the direct appeal, established she was a major participant in the underlying felony who acted with reckless indifference to human life. Leggett asserts the jury's special circumstance finding does not preclude relief and the court erred by relying on the previous appellate opinion and resolving factual disputes without issuing an order to show cause. She also contends her attorney provided ineffective assistance of counsel by failing to object to the court's consideration of the appellate court opinion.

We follow this court's recent decisions in *People v. Wilson* (2021) 69 Cal.App.5th 665 (*Wilson*) (Irion, J., O'Rourke, Acting P. J., Guerrero, J.) and *People v. Arias* (2021) 66 Cal.App.5th 987 (*Arias*) (McConnell, P. J., Dato, J., Guerrero, J.), and conclude the felony-murder special circumstance finding, which was made prior to *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), does not categorically bar Leggett from relief under section 1170.95.[2] Further, as the California Supreme Court recently clarified in *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*), it was permissible for the trial court to consider the previous

---

[1] All further statutory references are to the Penal Code.

[2] We acknowledge another panel of this court has previously reached the opposite conclusion. (*People v. Gomez* (2020) 52 Cal.App.5th 1 (*Gomez*) (O'Rourke, J., Benke, Acting P. J., Huffman, J.), review granted Oct. 14, 2020, S264033.)

appellate court opinion as part of the record of conviction, and Leggett's counsel did not provide ineffective assistance of counsel by providing a copy of the opinion to the court. However, the previous appellate opinion in this case is not sufficient, on its own, to establish whether the special circumstance finding satisfied the standards set forth in *Banks* and *Clark*. We therefore reverse the trial court's order denying the petition and remand the matter for resumption of proceedings.

FACTUAL AND PROCEDURAL HISTORY

The following short summary of the facts is taken from this court's opinion affirming the judgment in *People v. Kibler* (Dec. 4, 2003, H024455) 2003 WL 22872727 [nonpub. opn.].

Clarence Kibler shot and killed a gas station attendant in the early morning hours of July 25, 2000. A customer found the attendant lying face down on the floor in the bathroom surrounded in blood approximately an hour and a half later.

The victim's wrists were bound behind his back and his pants pockets were turned inside out. There was a significant amount of trauma to his face and a gunshot wound in his neck consistent with being shot at close range. There were two distinct sets of footprints in the blood on the floor and larger blood droplets near the toilet which indicated coagulation and that the assault occurred over a period of time. In addition, there was a partially smoked cigarette with mid-velocity blood spatter on top of the shoe prints which indicated someone had begun smoking and then tossed the cigarette onto the floor during the assault. There was toilet paper and a blood-soaked t-shirt near the victim's head. The police also found a dog repellant similar to mace on two walls and the upper right shoulder of the victim's shirt.

Leggett and Kibler used the victim's credit card for gas later that same morning and were subsequently identified and arrested. The police searched their car and found a number of the victim's belongings, shoes and clothing with medium velocity blood spatter stains, a disassembled .25 caliber semi-automatic handgun with five loose bullets, cigarettes, and a can of dog repellant spray consistent with the spray found on the walls and the victim's body.

Video footage from the store's surveillance system showed the following: "The attendant . . . was inside the cashier area at various times. At 1:22 a.m., a female [later determined to be Leggett] walked up to the window and talked with the attendant. The woman left and walked towards the restroom. At 1:24 a.m., [the attendant] left the cashier area and passed in front of the window. Three minutes later, a person came back from the bathroom area and passed the front window. Within the next minute, the same person appears to walk back to the bathroom area. Five minutes later, a black male with a shaved head and 'roundish' face, weighing about 200 pounds [later determined to be Kibler], entered the cashier area. The man had a glove on his right hand. At 1:36 a.m., the same woman came up to the window and looked at the male. The male was trying to open the cash register. He turned and peered out the window, and held up his left hand with his thumb and index finger together as if holding something towards the window. Two minutes later, the female reappeared outside the cashier window; moved back and forth; peered through the window watching the activity of the male; looked back towards the bathroom; and gestured with her arm towards the bathroom. The male passed by the window back towards the bathroom."

The cash register was locked when the police arrived, and the cash remained inside. A latent fingerprint lifted from the pass-through drawer inside the cashier's booth was a match for Leggett.

A witness told police he saw a car stop at a fast-food restaurant next to the gas station at around 1:13 a.m. A six-foot tall " 'African-American or Hispanic' " male got out of the passenger side of the car. The man paced around as if looking for something and then bent down and picked up an item from the bushes. The car drove off and the man walked to the corner of the fast-food restaurant and then towards the gas station.

Leggett testified in her own defense at trial and admitted being present at the scene of the murder. According to Leggett, she and Kibler were selling drugs together around the time of the murder. She was also using cocaine and methamphetamine but she hid her habit from Kibler, who did not use drugs. She prostituted herself to pay for the drugs and, the night before the murder, she agreed to orally copulate the gas station attendant for money. The attendant asked her to come back around 1:00 or 2:00 in the morning, when business was slow.

Leggett testified she told Kibler she was going to sell drugs, but he thought she was actually going to meet someone and insisted on going with her. They argued and Leggett eventually agreed Kibler could come as long as he waited out of sight while she made the deal. She dropped Kibler off at the fast-food restaurant next door to the gas station and parked near the cashier window. The attendant came out and led Leggett to the bathroom, unlocked the door, and Leggett followed the attendant inside. Leggett took off her blouse and, shortly thereafter, Kibler opened the door and entered the bathroom.

5

According to Leggett, Kibler struck the attendant. She tried to stay out of the way but also sprayed some mace she had in her purse at Kibler in an effort to stop the attack. Kibler left the bathroom at one point and Leggett tried to assist the attendant by putting pressure on a head wound to stop the bleeding. Kibler returned and was upset that Leggett was helping the attendant. Leggett testified he threatened to kill her if she ever left him and then shot the attendant. Shocked, Leggett left the bathroom and went to the car. She walked between the car and the cashier's booth while Kibler tried to open the cash register. She yelled for Kibler to leave the cashier's booth and they both got in the car and left.

In rebuttal, the prosecution presented an expert in modus operandi of robberies. The expert testified one of the common methods used to rob a gas station is for a female to lure the attendant out of the cash register area with sex, allowing a partner to overpower and rob them.

The jury convicted both Kibler and Leggett of first degree murder and found true a special circumstance allegation as to each that they committed the murder while engaged in the commission of a robbery within the meaning of section 190.2, subdivision (a)(17). In addition, the jury found true an allegation that Kibler personally discharged a firearm causing the victim's death. The court sentenced Leggett to life without the possibility of parole. This court confirmed the conviction.

In January 2019, Leggett filed a petition for resentencing pursuant to section 1170.95. The trial court appointed counsel for Leggett and received briefing on the petition.

The prosecutor asserted Leggett could not make a prima facie showing on the petition because the special circumstance finding, along with the relevant jury instruction, indicated she was a major participant in the

underlying felony who acted with reckless indifference to human life. The prosecutor also relied on facts taken from the appellate opinion in the direct appeal to assert Leggett was, in fact, a major participant who acted with reckless indifference, even after *Banks* and *Clark*. The prosecutor further argued Leggett could not make a prima facie showing because she submitted only the "[b]are [b]ones" form declaration and she did not submit any evidence in support of her petition.[3]

In response, counsel for Leggett asserted the special circumstance finding did not preclude relief and that it was not appropriate to present evidence at the prima facie stage. Counsel asserted Leggett had alleged all facts necessary to meet the prima facie showing and any factual dispute would need to be resolved after the issuance of an order to show cause. Counsel provided a copy of the appellate opinion from the direct appeal but argued "[i]t was not prepared using the inferences most favorable to Ms. Leggett; thus, it should not be controlling at the prima facie stage."

The trial court denied Leggett's petition for resentencing without issuing an order to show cause. The court concluded Leggett had not made a prima facie showing she was entitled to relief and that "the record of conviction supports, at a minimum, petitioner was a major participant in the underlying felony and acted with reckless indifference to human life as found true by the jury." Further, the court found the jury's finding was consistent with the previous appellate court opinion, which characterized Leggett's role in the crimes as "significant."

Leggett timely appealed.

---

[3]  The prosecutor also challenged the constitutionality of Senate Bill No. 1437 (2017–2018 Reg. Sess.) and section 1170.95. The trial court did not rule on that basis and the parties now agree that both are constitutional.

DISCUSSION

I.

*A True Felony-Murder Special Circumstance Finding Made Before* Banks *and* Clark *Does Not Categorically Bar Relief Under Section 1170.95*

Leggett asserts the jury's finding on the felony murder special circumstance does not preclude relief on her section 1170.95 petition. We agree.

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).) In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis, supra*, 11 Cal.5th at p. 959.)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made

8

effective January 1, 2019.' " (*Lewis, supra,* 11 Cal.5th at pp. 959–960; see also § 1170.95, subd. (b)(1).)

If the petition meets these basic requirements, the trial court "proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. ( § 1170.95, subd. (c).)" (*Lewis, supra,* 11 Cal.5th at p. 960.) "If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' ( § 1170.95, subd. (d)(1).)" (*Ibid.*) At the hearing on the order to show cause, " '[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' ( § 1170.95, subd. (d)(3).)" (*Ibid.*)

Here, the trial court concluded Leggett was not entitled to relief pursuant to section 1170.95 at least in part because of the jury's felony-murder special circumstance finding. This was error. There is no dispute that Leggett was not the actual killer. The jury made a felony-murder special circumstance finding pursuant to section 190.2, subdivision (a)(17), and that finding required the jury to conclude Leggett either acted with the intent to kill or was a major participant who acted with reckless indifference to human life. However, the jury made that finding in 2002, well before the California Supreme Court decided *Banks* and *Clark* and clarified the meaning of the terms "major participant" and "reckless indifference to human life" necessary to support such felony-murder special circumstance findings.

9

(*Banks, supra,* 61 Cal.4th at pp. 797–798, 803; *Clark, supra,* 63 Cal.4th at pp. 608–624.)

There is currently a split in the appellate courts as to whether a defendant is categorically precluded from relief under section 1170.95 based on a felony-murder special circumstance finding that occurred before *Banks* and *Clark*. (See *Wilson*, *supra*, 69 Cal.App.5th at pp. 672–673, 676–677.) Some courts have found that such a special circumstance finding bars relief under section 1170.95 and a defendant must instead pursue a claim that the finding would not be supported by substantial evidence following *Banks* and *Clark* through a petition for habeas corpus. (See *Gomez, supra,* 52 Cal.App.5th at pp. 16–17; *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1142–1143, review granted Oct. 14, 2020, S264284.) Others have disagreed and have, instead, concluded that a special circumstance finding does not categorically bar relief under section 1170.95 because the Court in *Banks* and *Clark* " 'construed the meanings of "major participant" and "reckless indifference to human life" "in a significantly different, and narrower manner." ' " (*People v. York* (2020) 54 Cal.App.5th 250, 258; see also *People v. Smith* (2020) 49 Cal.App.5th 85, 93–94, review granted July 22, 2020, S262835; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1180, review granted June 24, 2020, S262011.)

As this court recently stated: "The Courts of Appeal have subjected the issue at hand to vigorous debate and devoted countless pages of discussion on the subject. The issue is currently under review by the Supreme Court as well, so we will soon have clarity one way or the other. [Citation.] Given this context, we need not add to the conversation with further extensive argument or analysis. [¶] It will suffice for us to state that we are persuaded by the logic of the courts that have concluded pre-*Banks* and *Clark* felony-murder

10

special-circumstance findings do not categorically preclude defendants from obtaining resentencing relief under section 1170.95." (*Arias, supra,* 66 Cal.App.5th at pp. 1003–1004.) Thus, we adopt the pertinent analysis of those courts—including *Wilson, supra,* 69 Cal.App.5th 665 and *Arias, supra,* 66 Cal.App.5th 987—and incorporate them herein.

Here, as in *Wilson,* the jury found Leggett guilty of first degree murder and found the felony-murder special circumstances true before our high court provided additional guidance as to the factors relevant to those charges. (See *Wilson, supra,* 69 Cal.App.5th at p. 672.) Thus, "[i]t is possible that a jury considering [Leggett's] conduct under the gloss of *Banks* and *Clark* could find that the People did not meet their burden in proving the special circumstances true." (*Id.* at p. 685.) We therefore conclude the jury's felony-murder special circumstance finding does not bar Leggett from relief under section 1170.95.

That does not end our inquiry, though. Unlike *Wilson,* the trial court in this case went on to consider the record of conviction, including the previous appellate opinion, and concluded the record supported the jury's special circumstance finding. We therefore consider whether the court's additional analysis provided a sufficient basis to deny the petition.

## II.

*The Appellate Opinion from the Direct Appeal Is Not Sufficient to Support the Jury's Special Circumstance Finding Following* Banks *and* Clark

Leggett asserts the trial court's additional analysis does not provide a sufficient basis to deny the petition. She argues the trial court erred by relying on the previous appellate opinion at all and, more specifically, by relying on the opinion to improperly resolve factual disputes regarding her role in the murder. We agree with Leggett but reject her additional claim

that her counsel was ineffective for submitting a copy of the previous appellate opinion and not further objecting to the court's consideration of it.

While the present appeal was pending, our high court issued its opinion in *Lewis* and clarified to what extent the trial court may rely on the record of conviction in determining whether a defendant has made a prima facie showing on a petition for resentencing pursuant to section 1170.95.[4] (*Lewis, supra,* 11 Cal.5th at pp. 970–972.) As the Court in *Lewis* explained, the "trial court can rely on the record of conviction in determining whether that single prima facie showing is made," and appellate opinions "are generally considered to be part of the record of conviction." (*Id.* at pp. 970, 972.) Further, "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process. (See Stats. 2018, ch. 1015, § 1, subd. (f).)" (*Id.* at p. 971.)

However, "the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary

_____

[4] We asked the parties for supplemental briefing regarding the impact of *Lewis* on this case, and we have received and considered their responses.

12

hearing.' " (*Lewis, supra,* 11 Cal.5th at p. 971.) Specifically, with respect to appellate opinions, the Court cautioned the probative value "is case-specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' [Citation.] In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at p. 972.)

As the court in *Lewis* clarified, it was permissible for the trial court to consider the appellate court opinion as part of the record of conviction and, thus, the court did not err by doing so. (*Lewis, supra,* 11 Cal.5th at p. 972.) Further, although Leggett's counsel did not have the benefit of the *Lewis* decision, he appropriately raised many of the same limitations regarding the application of the opinion in the context of the section 1170.95 petition in his briefing and at the hearing on the petition. We therefore conclude Leggett's counsel did not provide ineffective assistance of counsel. In any event, and contrary to the trial court's findings, the previous appellate opinion is not sufficient, on its own, to resolve the factual disputes at issue in this case and, therefore, remand is appropriate.

The trial court found the jury's special circumstance finding was "consistent with the appellate court's opinion, as well as the appellate court's explanation that the petitioner's role in the murder was significant." The court relied upon the following portion of the appellate opinion to support its conclusion:

> "Contrary to Leggett's suggestion that her participation was minimal, the evidence showed that her role in [the attendant's] murder was significant. Leggett purposely went to the gas station to solicit [the attendant] to engage in an act of prostitution. She arranged to return when [the attendant] was alone and vulnerable. When she returned, she left Kibler, a 6-foot, 200 pound male, at the Kentucky Fried Chicken parking lot. In the meantime, Leggett drove to the gas station and purposely

13

lured [the attendant] away from the security of his cashier booth. She set the stage for the brutal attack on [the attendant] that followed when Kibler burst into the bathroom. Leggett not only stood by and watched, but also sprayed [the attendant] with dog repellant to disable him. Then, when Kibler left the bathroom and entered the cashier booth, Leggett acted as a 'lookout' to ensure that [the attendant] did not leave the bathroom. After Kibler shot [the attendant] in the neck, Leggett drove the 'getaway' car. Leggett may not have struck the blows that lead to [the attendant's] death or pulled the trigger on the gun, but she was not a passive participant either."

Although the passage characterizes Leggett's participation as "significant," the appellate court was not addressing the conviction itself, or the special circumstance finding, and was, instead, considering Leggett's assertion "that her sentence was disproportionate to her culpability." Thus, the appellate court did not consider whether the evidence supported the jury's special circumstance finding, and certainly did not consider whether it would continue to support such a finding following *Banks* and *Clark*.[5] (See

---

[5] In *Banks*, the Court clarified that the following questions are relevant when determining whether the defendant was a major participant: "What role did the defendant have in planning the criminal enterprise that led to one or more deaths? What role did the defendant have in supplying or using lethal weapons? What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants? Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? What did the defendant do after lethal force was used?" (*Banks, supra,* 61 Cal.4th at p. 803.) Further, following *Clark*, whether the defendant knew that a gun would be used during the felony, whether the defendant "ha[d] the opportunity to restrain the crime or aid the victim," and "the defendant's knowledge of his or her confederate's propensity for violence" are relevant factors, among others, in determining whether the defendant acted with reckless indifference to human life. (*In re Scoggins* (2020) 9 Cal.5th 667, 677, citing *Clark, supra,* 63 Cal.4th at pp. 618–623.)

14

*Wilson, supra,* 69 Cal.App.5th at p. 685 [explaining that the pre-*Banks* and *Clark* requirement of " 'substantial' " participation " 'in criminal activities known to carry a grave risk of death' " for felony murder liability "were nebulous" and insufficient].)

Further, without the assistance of *Banks* and *Clark*, Leggett's counsel did not have reason to develop or argue the factors set forth in those cases to the jury. Similarly, Leggett also did not have the benefit of *Banks* and *Clark* when she filed the direct appeal, and, perhaps as a result, did not assert the evidence was insufficient to support the jury's special circumstance finding. Thus, as noted, the appellate court was not considering the *Banks* and *Clark* factors when it characterized Leggett's participation as "significant."

Further still, as Leggett's counsel on the petition pointed out, the appellate court views the evidence and presents the facts in the light most favorable to the judgment. (See *People v. Smith* (2005) 37 Cal.4th 733, 739; *People v. Avanessian* (1999) 76 Cal.App.4th 635, 637 ["As mandated by the traditional rule governing appellate review, we recite the evidence in the light most favorable to the judgment."].) Thus, the appellate court appropriately relied on evidence supporting its conclusion that Leggett's participation was "significant," while largely disregarding the evidence Leggett presented in her own defense. In turn, then, the trial court relied on that description of the evidence to deny Leggett's petition for resentencing. As the Court stated in *Lewis*, the "trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion' " at the prima facie stage. (*Lewis, supra,* 11 Cal.5th at p. 972.) But the trial court effectively did that here, when it relied on the previous appellate court's characterization of *disputed* facts.

15

The People contend the issue of whether the record of conviction supports the jury's special circumstance finding even after *Banks* and *Clark* is a matter of law that we can independently resolve on appeal. "[T]he application of *Banks* and *Clark* to a given set of facts ultimately presents an issue of law," such that the appellate court should undertake an individualized review of the record of conviction to determine whether the special circumstance finding satisfies the *Banks* and *Clark* standards. (*People v. Secrease* (2021) 63 Cal.App.5th 231, 255 (*Secrease*), review granted June 30, 2021, S268862; accord *Wilson, supra*, 69 Cal.App.5th at p. 686; *Arias, supra*, 66 Cal.App.5th at pp. 1004–1005.) However, when, as here, the record of conviction before the court "consists almost entirely of what we can discern from [the appellate opinion in the direct appeal]" and it is "too sparse to make a definitive assessment of that issue one way or another," remand is proper. (*Secrease*, at p. 261; see also *Wilson,* at p. 686 [declining to conduct a review under *Banks* and *Clark* on appeal and clarifying the trial court need not rely solely on the previous appellate opinion]; *Arias*, at pp. 1005–1006 [remanding for trial court to conduct a sufficiency of the evidence review of the full record of conviction because the appellate opinion did not address the vast majority of the actus reus and mens rea factors set forth in *Banks* and *Clark*].)

Accordingly, we remand the matter to the trial court to consider the issue "in light of the full record of conviction, including the trial evidence."[6]

---

[6] The record on appeal indicates the trial transcript was unavailable, at least as of September 2019, when Leggett filed her reply to the prosecutor's opposition. It is unclear what other portions of the record were available to the trial court, or if the trial transcript could be obtained through some other means. The parties may address the availability of the trial record, and its impact on the petition, on remand.

(See *Secrease, supra,* 63 Cal.App.5th at p. 261; accord *Wilson, supra,* 69 Cal.App.5th at p. 686; *Arias, supra,* 66 Cal.App.5th at pp. 1005–1006.) On remand, the trial court must determine whether Leggett has made a prima facie showing on her petition, notwithstanding the jury's special circumstance findings. As our high court recently clarified, "the 'prima facie bar was intentionally and correctly set very low.' " (*Lewis, supra,* 11 Cal.5th at p. 972.) "Thus, the trial court should issue an [order to show cause] unless the [full] record of conviction unequivocally negates [Leggett's] contentions, rendering [her] unable to meet [her] burden." (*Wilson, supra,* 69 Cal.App.5th at p. 687.)

## DISPOSITION

The order denying Leggett's petition for resentencing pursuant to section 1170.95 is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

DO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.

17