Filed 12/30/21  P. v. Bernal CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D078324 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE266559) |
| FRANKO BERNAL, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, John M. Thompson, Judge.  Reversed and remanded with instructions.

Appellant Defenders, Inc. and Arthur Martin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Randall D. Einhorn, Deputy Attorneys General for Plaintiff and Respondent.

INTRODUCTION

Franko Bernal appeals from the summary denial of his petition to vacate one of two first degree murder convictions under Penal Code[1] section 1170.95.  The trial court found he was not entitled to relief, as a matter of law, because the jury returned a true finding on a robbery-murder special circumstance with the murder conviction.  The jury's finding on the special circumstance was made prior to the California Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), which decisions clarified the meaning of the terms "major participant" and "reckless indifference to human life" necessary to support such felony-murder special circumstance findings.  (*Banks,* at pp. 797–798, 803; *Clark,* at pp. 608–624.)

The California Supreme Court is currently reviewing the question of whether a felony-murder special circumstance finding made before *Banks* and *Clark* precludes a defendant from making a prima facie showing of eligibility for relief under section 1170.95.  (*People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted Mar. 10, 2021, S266606.)  Until then, we follow this court's decisions in *People v. Wilson* (2021) 69 Cal.App.5th 665 (*Wilson*) (Irion, J., O'Rourke, A.P.J., Guerrero, J.) and *People v. Arias* (2021) 66 Cal.App.5th 987 (*Arias*) (McConnell, P.J., Dato, J., Guerrero, J.), and conclude a felony-murder special circumstance finding made prior to *Banks* and *Clark* does not categorically bar relief under section

---

1    All further statutory references are to the Penal Code.

1170.95.[2]  Further, given the limited record of conviction before us, we are unable to independently determine whether the special circumstance finding satisfied the standards set forth in *Banks* and *Clark*.  We therefore reverse the trial court's order denying the petition and remand the matter for resumption of proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

The following short summary of the facts is taken from this court's opinion affirming the judgment in *People v. Bernal* (Dec. 20, 2011, D055043, D059644) [nonpub. opn.] (*Bernal I*).)

Bernal and McCauley were "inseparable friends."  McCauley was homeless and did not drive.  Bernal drove a car with a paper license tag, a large dent in the driver's side door, and a sticker in the rear window that read, " 'I do fat bitches.' "  Bernal owned a .22–caliber sawed-off rifle nicknamed the " 'Jack Sparrow,' " which he often carried in his car or the waistband of his pants.

On November 23, 2006, McCauley shot and killed a young man walking home from a Thanksgiving dinner in Murrieta with a .22–caliber gun. Bernal knew of the murder.  The night of November 24, Bernal and McCauley went to a party where McCauley loudly bragged to guests, " 'I killed someone in Murrieta last night.' "  In response Bernal laughed and said, " 'Clack, clack, clack,' " signifying the sound of a gun.  Bernal also boasted, " 'Oh, yeah, we blasted this one guy' " and lifted his shirt to expose a gun in the front waistband of his pants.

---

[2]     We acknowledge another panel of this court has previously reached the opposite conclusion.  (*People v. Gomez* (2020) 52 Cal.App.5th 1 (*Gomez*) (O'Rourke, J., Benke, A.P.J., Huffman, J.), review granted Oct. 14, 2020.)

Just over 24 hours later, in the early morning hours of November 25, 2006, McCauley robbed a 7-Eleven store with the same .22–caliber gun. He shot a customer in the face and then shot the store clerk three times in the chest, killing the clerk. He stole change from the register, some scratch-off lottery tickets, and some beer. Bernal drove the getaway car, which had been seen driving back and forth outside the 7-Eleven with its headlights off during the two minutes McCauley was inside.

The customer survived and later reported that he saw a car traveling slowly in front of him while on his way to the 7-Eleven earlier that morning. A man tumbled out of the passenger door and the car stopped. The passenger and the driver argued, and the passenger got back into the car. The car had a paper tag rather than a license plate and a sticker in the back window that read, as he recalled, " 'I do fat chicks.' " The customer said that he fled the convenience store after being shot and saw a similar car parked nearby, with a man standing near the open driver's door.

A witness, who knew both McCauley and Bernal through a mutual friend, heard McCauley on Thanksgiving weekend brag that he " 'robbed a 7-Eleven and that he shot somebody,' and the day before in Murrieta he 'robbed a kid for an iPod' and shot him." McCauley said he used the " 'Jack Sparrow' " and Bernal was present at both shootings. McCauley later told his aunt it was Bernal that wanted to rob the store, but he got annoyed when Bernal kept driving back and forth in front of the store, so he decided to " 'take over.' " McCauley admitted that he killed the clerk and stole money and beer.

Bernal testified in his own defense and admitted he was present at the scenes of the crimes. He testified he drove McCauley the night of November 23 to buy drugs in Murrieta and, although he heard two gunshots while both

4

were outside the car, he thought it was McCauley shooting in the air. On November 25, he drove McCauley to the 7-Eleven to get some beer but did not know McCauley planned to rob the store or that he shot anyone.

In one trial, separate juries convicted McCauley, as the perpetrator, and Bernal, as the aider and abettor, of two counts of first degree murder (§§ 187, subd. (a), 189; counts 1 and 2), premeditated attempted murder (§§ 187, subd. (a), 189, 664; count 3), and robbery (§ 211; count 4). Bernal's jury also convicted him of attempted robbery (§§ 211, 664; count 5). Bernal's jury further found true that he vicariously used a firearm (§ 12022, subd. (a)(1)), the special circumstance of multiple murder (§ 190.2, subd. (a)(3)), and, as to the 7-Eleven murder in count 2, the special circumstances of murder during the commission of robbery and burglary (§ 190.2, subds. (a)(17)(A) & (G)).

Bernal was sentenced to a total of two terms of life without the possibility of parole plus one year for the murders (counts 1 & 2), plus one term of life with the possibility of parole plus one year on the attempted murder (count 3), with all terms running concurrently.

This court affirmed the judgment on direct appeal in 2011. In doing so, we rejected Bernal's claim that the trial court erred in denying his motion for judgment of acquittal pursuant to section 1118.1 on counts 1, 2, 3 and 5, on the basis there was insufficient evidence of aiding and abetting.

In January 2019, Bernal filed a petition for a writ of habeas corpus seeking resentencing under section 1170.95. The trial court deemed the filing as a petition for resentencing under section 1170.95 and appointed counsel for Bernal. For reasons that are not entirely clear, Bernal filed another petition for resentencing in June 2019. The People asserted, among other arguments, that Bernal was not entitled to relief with respect to the 7-

Eleven murder because the jury's true findings on the special circumstances of murder during the commission of robbery and burglary necessarily evidenced the malice required under the newly amended section 189. Bernal responded that the special circumstance findings did not bar relief because the jury's findings were made well before *Banks* and *Clark*.

In October 2020, the trial court found Bernal was ineligible for relief, as a matter of law, with respect to the 7-Eleven murder in count 2. Relying on this court's opinion in *Gomez, supra*, 52 Cal.App.5th 1, the trial court concluded that in finding the robbery-murder special circumstance true, the jury necessarily found Bernal participated in the robbery with the intent to kill or that he was a major participant in the robbery who acted with reckless indifference to human life.[3] The court recognized that there is a split in authority among the Courts of Appeal on the issue and elected to follow its own appellate district in *Gomez*.[4] Although not at issue here, the court also found Bernal's arguments with respect to the Murrieta murder in count 1 unavailing and, thus, denied the petition in its entirety.

Bernal timely appealed.

---

[3]   As noted, the jury also found true a special circumstance that the murder was committed during the commission of a burglary within the meaning of section 190.2, subdivision (a)(17)(G). The trial court relied solely on the robbery-murder special circumstance in denying Bernal's section 1170.95 petition but, regardless, our decision would be the same had the court relied on the second special circumstance as well.

[4]   We note the trial court did not have the benefit of *Wilson* and *Arias*, both of which were issued well after Bernal's petition was denied.

# DISCUSSION

## I.

### *A True Felony-Murder Special Circumstance Finding Made Before* Banks *and* Clark *Does Not Categorically Bar Relief Under Section 1170.95*

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).) In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' " (*Lewis, supra,* 11 Cal.5th at pp. 959–960; see also § 1170.95, subds. (a), (b)(1).)

If the petition meets these basic requirements, the trial court "proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief. (§ 1170.95, subd. (c).)" (*Lewis, supra,* 11 Cal.5th at p. 960.) "If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' (§ 1170.95, subd. (d)(1).)" (*Ibid.*) At the hearing on the order to show cause, " '[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' (§ 1170.95, subd. (d)(3).)" (*Ibid.*)

The trial court determined Bernal was not eligible for relief under section 1170.95 at the prima facie stage and, with respect to count 2, based its decision solely on the jury's robbery-murder special circumstance finding. Bernal asserts the trial court erred because the special circumstance finding does not categorically bar him from relief under section 1170.95.[5] We agree.

---

[5] Bernal does not contest the trial court's decision with respect to count 1 in the present appeal and, thus, our decision here relates only to the 7-Eleven murder charged in count 2. In addition, we note the Legislature recently passed Senate Bill No. 775, which amends section 1170.95 to permit petitions for resentencing on attempted murder charges, effective January 1, 2022. (Sen. Bill No. 775, approved by Governor, Oct. 5, 2021 (2021–2022 Reg. Sess.) § 2.) Bernal filed the petition for resentencing at issue in the present appeal prior to that amendment and did not address count 3, the attempted murder charge. Accordingly, we do not address count 3 and nothing in this opinion is intended to preclude Bernal from seeking resentencing on count 3 pursuant to section 1170.95, as amended.

There is no dispute here that Bernal was not the actual shooter and was not in the store when McCauley shot the victims. The jury made felony-murder special circumstance findings pursuant to section 190.2, subdivision (a)(17), and those findings required the jury to conclude Bernal either had the intent to kill or was a major participant that acted with reckless indifference to human life. However, the jury made those findings in 2009, well before the California Supreme Court decided *Banks* and *Clark* and clarified the meaning of the terms "major participant" and "reckless indifference to human life" necessary to support such felony-murder special circumstance findings. (*Banks, supra,* 61 Cal.4th at pp. 797–798, 803; *Clark, supra,* 63 Cal.4th at pp. 608–624.)

As the trial court acknowledged, there is currently a split in the appellate courts as to whether a defendant is categorically precluded from relief under section 1170.95 based on a felony-murder special circumstance finding that occurred before *Banks* and *Clark*. (See *Wilson, supra*, 69 Cal.App.5th at pp. 672–673, 676–677.) Some courts have found that such a special circumstance finding bars relief under section 1170.95 and a defendant must instead pursue a claim that the finding would not be supported by substantial evidence following *Banks* and *Clark* through a petition for habeas corpus. (See *Gomez, supra*, 52 Cal.App.5th at pp. 16–17; *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1142–1143, review granted Oct. 14, 2020, S264284.) Others have disagreed and have, instead, concluded that a special circumstance finding does not categorically bar relief under section 1170.95 because the Court in *Banks* and *Clark* " 'construed the meanings of "major participant" and "reckless indifference to human life" "in a significantly different, and narrower manner." ' " (*People v. York* (2020) 54 Cal.App.5th 250, 258; see also *People v. Smith* (2020) 49 Cal.App.5th 85, 93–

9

94, review granted July 22, 2020, S262835; *People v. Torres* (2020) 46 Cal.App.5th 1168, 1180, review granted June 24, 2020, S262011.)

As this court recently stated: "The Courts of Appeal have subjected the issue at hand to vigorous debate and devoted countless pages of discussion on the subject. The issue is currently under review by the Supreme Court as well, so we will soon have clarity one way or the other. [Citation.] Given this context, we need not add to the conversation with further extensive argument or analysis. [¶] It will suffice for us to state that we are persuaded by the logic of the courts that have concluded pre-*Banks* and *Clark* felony-murder special-circumstance findings do not categorically preclude defendants from obtaining resentencing relief under section 1170.95." (*Arias*, *supra*, 66 Cal.App.5th at pp. 1003–1004.) Thus, we adopt the pertinent analysis of those courts—including *Wilson*, *supra*, 69 Cal.App.5th 665 and *Arias*, *supra*, 66 Cal.App.5th 987—and incorporate them here.

As in *Wilson*, the jury here found Bernal guilty of first degree murder and found the felony-murder special circumstances true before our high court provided additional guidance as to the factors relevant to those charges. (See *Wilson*, *supra*, 69 Cal.App.5th at pp. 684–685.) Thus, "[i]t is possible that a jury considering [Bernal's] conduct under the gloss of *Banks* and *Clark* could find that the People did not meet their burden in proving the special circumstances true." (*Id*. at p. 685.) In addition, we note that, here, Bernal did file a petition for habeas corpus, but the trial court deemed the filing a petition for resentencing pursuant to section 1170.95. We therefore conclude the trial court erred by relying solely on the robbery-murder special circumstance finding to deny Bernal's section 1170.95 petition with respect to count 2.

## II.

### *Remand Is Appropriate*

The People assert any error is harmless because the record of conviction establishes the jury's robbery-murder special circumstance finding was valid as a matter of law even if we consider the additional guidance provided in *Banks* and *Clark*. We disagree.

"[T]he application of *Banks* and *Clark* to a given set of facts ultimately presents an issue of law," such that the appellate court should undertake an individualized review of the record of conviction to determine whether the special circumstance finding satisfies the *Banks* and *Clark* standards. (*People v. Secrease* (2021) 63 Cal.App.5th 231, 255 (*Secrease*), review granted June 30, 2021, S268862; accord *Wilson*, *supra*, 69 Cal.App.5th at p. 686; *Arias*, *supra*, 66 Cal.App.5th at pp. 1004–1005.) However, when, as here, the record of conviction before the court "consists almost entirely of what we can discern from [the appellate opinion in the direct appeal]" and it is "too sparse to make a definitive assessment of that issue one way or another," remand is proper. (*Secrease*, at p. 261; see also *Wilson,* at p. 686 [declining to conduct a review under *Banks* and *Clark* on appeal and clarifying the trial court need not rely solely on the previous appellate opinion]; *Arias*, at pp. 1005–1006 [remanding for trial court to conduct a sufficiency of the evidence review of the full record of conviction because the appellate opinion did not address the vast majority of the *actus reus* and *mens rea* factors set forth in *Banks* and *Clark*].)

Similarly, here, the People rely on the previous appellate opinion in the direct appeal, but the opinion does not provide a sufficient set of undisputed facts to allow us to make a definitive assessment of whether the felony-murder special circumstance satisfies the *Banks* and *Clark* standards.

Instead, the opinion reveals at least some dispute regarding the facts central to such an analysis. Specifically, the opinion indicates there was evidence Bernal had a role in planning, or at least knowledge of, the robbery, and that he provided the gun to McCauley, knowing that McCauley had a propensity to kill. (*Bernal I, supra,* D055043, D059644.) However, there was also evidence Bernal and McCauley argued before the robbery, and Bernal testified that he did not know McCauley planned to rob the store. (*Ibid.*) Further, it was undisputed that Bernal was not inside the store when the murders occurred. (*Ibid.*)

Further still, there may have been evidence relevant to the inquiry that was not cited in the previous appellate opinion. As is appropriate in such cases, the appellate opinion does not resolve disputes in the evidence and, instead, "recite[s] the evidence in the light most favorable to the judgment." (*People v. Avanessian* (1999) 76 Cal.App.4th 635, 637.) However, when determining whether substantial evidence supports the jury's finding on a special circumstance finding, the focus "is on the *whole* record of evidence presented to the trier of fact." (*People v. Cuevas* (1995) 12 Cal.4th 252, 261.)

We therefore remand the matter to the trial court to consider the issue "in light of the full record of conviction, including the trial evidence." (*Secrease, supra,* 63 Cal.App.5th at p. 261; accord *Wilson, supra,* 69 Cal.App.5th at p. 686; *Arias*, *supra*, 66 Cal.App.5th at pp. 1005–1006.) On remand, the trial court must determine whether Bernal has made a prima facie showing on his petition with respect to count 2, notwithstanding the jury's special circumstance findings. As our high court recently clarified, the trial court may consider the record of conviction, including the appellate

12

opinion in the direct appeal,[6] but "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, *supra,* 11 Cal.5th at p. 972.) "[T]he 'prima facie bar was intentionally and correctly set very low.' " (*Ibid*.) "Thus, the trial court should issue an [order to show cause] unless the record of conviction unequivocally negates [Bernal's] contentions, rendering him unable to meet his burden." (*Wilson, supra,* 69 Cal.App.5th at p. 686.)

---

[6] We further note this court in the direct appeal found there was sufficient evidence that Bernal aided and abetted McCauley to overcome a motion for acquittal under section 1118.1 as to count 2. However, in that context, the court was considering only whether there was " ' "any substantial evidence of the existence of each element of the offense charged" ' " such that the matter could be submitted to the jury (*People v. Cole* (2004) 33 Cal.4th 1158, 1213), not whether the evidence was sufficient to support the verdict as a matter of law. Moreover, the court determined there was evidence from which the jury could reasonably find the murder was a reasonably foreseeable consequence of the robbery under a natural and probable consequence theory, but that is no longer a viable theory for first degree murder. (See *Secrease, supra,* 63 Cal.App.5th at p. 260 [noting the court in the prior appeal relied on a theory of aiding and abetting and the reasonably foreseeable consequences of the target offense].)

## DISPOSITION

The order denying Bernal's section 1170.95 petition is reversed and the matter is remanded to the trial court for resumption of proceedings to determine whether Bernal has made a prima facie showing on the petition for resentencing.

DO, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.